Statement of Facts.

# SYLVESTER ROSS v. J. W. WALKER.
# HUGH ROSS v. J. W. WALKER.

## APPEALS BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 27, 1890—Decided January 5, 1891.

[To be reported.]

1. It is the duty of an employer to provide his laborers with suitable places to work, with suitable tools and machinery to use in doing their work, and with reasonably competent fellow laborers with whom to work; and also, to instruct the young and inexperienced laborer in the use of the tools and machinery, and as to the dangers peculiar thereto.
2. A vice-principal is one to whom an employer delegates the performance of these duties and therein represents the employer, so that his acts are the acts of his principal; but, except when and so long as the acts of a foreman are in discharge of these duties, due from the employer to his employees, he acts as a workman and not as a vice-principal.
3. Wherefore, when it is sought to hold an employer liable to an employee for the negligent act of a foreman, it must first be considered whether the negligence alleged relates to anything which it was the master's duty to do; if it does, he is liable; but if not, and the foreman selected is reasonably competent, he is not liable.
4. It is not the duty of an employer, after having provided materials ample in quantity and quality for the work his employees are engaged in, to supervise the selection of every piece of material for every purpose; and, if his foreman should make the selection, he does not represent the master therein as a vice-principal.
5. In such case, it is not material whether the person who did the negligent act had entire control of the work or not; whether he, as a foreman, selected from the mass the materials to be used for any particular purpose or not, or whether he hired or discharged the men or not; his act was but the act of a fellow employee.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 4, 5 October Term 1890, Sup. Ct.; court below, Nos. 115, 116 April Term 1888, C. P. No. 2.

At No. 116 April Term 1888, of the court below, Sylvester Ross, a minor, by his next friend, Hugh Ross, brought trespass against J. W. Walker, to recover for personal injuries received

by said Sylvester Ross, in consequence, as was alleged, of negligence on the part of the defendant. Issue.

At No. 115 of the same term Hugh Ross brought trespass against the same defendant, to recover damages, as the father of Sylvester Ross, for the same injuries. Issue.

The two cases were tried together on September 30, 1889, when the following facts were shown:

In June, 1887, the defendant was engaged in erecting, as a contractor, an iron bridge over the Pittsburgh, Ft. Wayne & Chicago railway, at Superior station, Allegheny county, to replace a wooden one upon the same location. Sylvester Ross, then about nineteen years of age, was one of the workmen employed, and the defendant's foreman, one Duffey, had a general oversight of the work. In a general way, Duffey directed the work and the men, and occasionally hired and discharged men. The testimony of certain witnesses tended to show that Duffey was in entire charge of the work, and that, while the defendant was on the ground several times during its progress, he gave no directions to the workmen.

On June 21, 1887, the men were engaged in erecting part of the scaffolding required for use in putting up the bridge. An abundance of material had been provided for that purpose, part of which consisted of timbers taken out of the old bridge. Out of the mass of material, a piece of 8 by 10 timber was selected by some one for use as a "cap" in the scaffolding or false work. The testimony was conflicting as to whether it was selected for this particular use by Duffey, or by one of the workmen under him. It was of sufficient size for the purpose, however, and was sound, except that it contained a large knot which weakened it. The testimony tended to show that the knot was visible upon the surface, though larger in the interior of the timber, and that an ordinary inspection would have discovered it. After the cap had been put in position it broke, in consequence of the weakness produced by the knot, causing Sylvester Ross to fall to the ground and receive the injuries for which these actions were brought.

No question was raised as to the competency and skilfulness of the foreman, and of the other workmen who were employed with Ross, and there was no evidence of any negligence in the construction of the scaffolding, except in the use of this defective piece of timber as a cap.

Charge of Court below.

At the close of the testimony, the court, EWING, P. J., charged the jury in part as follows:

The defendant requests the court to charge the jury as follows:

2. That, if the jury find that the defect in the timber was visible, then the negligence in the use of it was the negligence of the fellow servants of Sylvester Ross, and not the negligence of defendant, and the verdict must be for the defendant.

Answer: The second point is refused.[1]

3. That, if the defendant furnished an abundance of material from which the workmen employed in constructing the bridge could select suitable timber for the erection of the false work, and plaintiff's fellow servants selected the defective timber, the breaking of which was the cause of plaintiff's injury, the defendant is not liable therefor, and the verdict must be for the defendant.

Answer: The third point is affirmed.

4. That, under all the evidence in this case, the verdict must be for the defendant.

Answer: The fourth point is refused.[2]

5. That, if the jury find that the defendant put the work in charge of a competent foreman, and there was enough suitable material on the ground to build the scaffolding, then there is no negligence on the part of the defendant, and the verdict must be for the defendant.

Answer: The fifth point is refused. If Mr. Duffey was nothing more than a mere foreman, in the ordinary sense of that term, in charge of the work under the general superintendence of the defendant, the point is affirmed. But, if Mr. Duffey was in the entire charge and control of the work of erecting the bridge, determining what materials were to be furnished for the scaffolding, employing and discharging the men, and directing where and what materials were to be used, he was acting for Mr. Walker as vice-principal, and his negligence would then be the negligence of the defendant.[3]

—After referring to the testimony, the court proceeded:

A question for you to determine, before you need consider as to whether or not Mr. Duffey was guilty of negligence, is what position he occupied. That is a question of fact for the jury. I do not mean to say that it is a question for the jury

to determine as to what the responsibility of Mr. Walker would be for Mr. Duffey's acts, if the facts were not in dispute. Because, if the facts were not to some extent matters for the jury to determine, the court would say what position he occupied. [But, we have already said to you that if Mr. Duffey was in entire charge of this work of building the bridge, erecting scaffolding and determining what material was needed and how it was to go up, having general control, hiring the men, (which is not a very important or material matter, whether he hired and paid them or not,) but if he were in entire charge of this work, determined what was to be furnished and how it was to go up, not under the general superintendence of Mr. Walker, going back and forth, then he is to be treated just as though it was Mr. Walker there; acting in general superintendence,—not, however, where he was acting as a workman or as a mere foreman of a gang or squad of men, but if he was in entire charge of that work; then, his acts in that general charge are to be treated in this case as the acts of Mr. Walker. It is for the jury to say whether he was there in that way or not; if he was not, but was simply an ordinary foreman in charge, without this authority, you will find for the defendant;] [4] you need not go any further.

To explain what I mean: If Mr. Rea, and the other men who aided in erecting this bridge, in putting in this piece of timber, were simply the fellow workmen of this young man who was hurt, and if the putting in of the timber was their negligence, the plaintiffs cannot recover. If the timber was simply furnished and lying there, and good timber also, and it was their business to make a selection, and they negligently selected this bad piece of timber, the plaintiffs cannot recover. But, if Mr. Duffey was in this general charge of the work, that I have indicated to you would make Mr. Walker responsible for him; and if he determined that this was a fit piece of timber for that place, selected it and ordered it put in there, in this general charge of the work, then the act would be that of Mr. Walker, and then you would come to the question whether he was negligent or not.

Now bear in mind, again, what negligence is; he is not an insurer. It does not follow that because the timber turned out to be defective in fact, there was negligence in putting it

Arguments.

in. If it was apparently strong and sufficient, and he put it in, it is one of those accidents that nobody is responsible for, if it was in the exercise of reasonable care. But, if the knot so showed that he, on a reasonable inspection of it, could have ascertained, and should have ascertained that it was unfit for the place, then it was negligence. You have his testimony on that point and the testimony of the others. The witnesses for the defence say that the piece of timber looked to be all right outside. The workmen who put it in, Miller and Rea, say it appeared to be all right, and one of them said, at one time, that he and his fellow workmen selected it; but again, the same witness said that Mr. Duffey was also there. The witnesses who testify to its appearance, after the break, do not pretend to have seen it before, and it might very readily be a knot that would weaken largely in the interior of the wood, and yet show to a very trifling extent on the surface. I do not understand that knots that endanger a piece of timber of that size will always appear on the surface, at all, and you have the testimony of Mr. Duffey as to how this knot ran through the stick of timber, the only witness who gives any account as to how it did run. No witness says that the timber itself was rotten or unsound, and on that simple, very narrow question stands the right of the plaintiffs to recover, if at all. Unless Mr. Duffey is to be treated as the vice-principal and standing in the place of Mr. Walker, for the reasons I have given, then the plaintiffs cannot recover; and, even if he does so stand, unless he was guilty of negligence in his selection of that timber to be in there, and did select it in order to put it in that place, they cannot recover.

The jury rendered a verdict for $134 in favor of Sylvester Ross, and a verdict in favor of Hugh Ross for $166. Judgments having been entered, the defendant took these appeals, assigning for error:

1–3. The answers to defendant's points. [1 to 3]

4. The part of the charge embraced in [ ] [4]

*Mr. James H. Reed* (with him *Mr. P. C. Knox*), for the appellant:

It was not contended upon the trial that there was any per-

sonal negligence on the part of the defendant, as the employer of the workmen engaged in erecting the bridge. If there was any negligence in the selection of the defective piece of timber, and lack of care in its inspection before it was put up in place, it was the negligence of a fellow servant. It was the duty of the defendant to provide suitable material out of which his servants could erect the scaffolding; and, admittedly, he could not delegate this duty, except subject to a liability for the negligence of his agent, if the latter should fail to provide such suitable materials. But, having provided an abundance of sufficient and proper materials, he is not liable to a servant for the act of a fellow servant, in passing by safe material and picking out that which was unsafe. Nor, was he required to remove out of the reach of his servants every piece of timber unsuitable for the scaffolding. Duffey was but a fellow servant of Sylvester Ross, and for his negligence the defendant is not liable: Lehigh V. Coal Co. v. Jones, 86 Pa. 432; New York etc. R. Co. v. Bell, 112 Pa. 409; Kinney v. Corbin, 132 Pa. 341; Wilson v. Merry, L. R. 1 S. & D. App. 326.

*Mr. John S. Ferguson* (with him *Mr. J. Charles Dicken*), for the appellees:

The verdicts amount to a finding that Duffey was a vice-principal, as defined by the court. Unless the definition is wrong, or there is no evidence bringing Duffey within it, there is nothing to be considered in these appeals. The testimony shows that Duffey had an authority that an ordinary foreman does not have. He had charge of all classes of workmen and directed them in their work. He employed and discharged men. He was in sole control. Though the master occasionally visited the work, he exercised no supervision or control, and gave no orders or directions. Duffey was his mouth piece, not as a foreman, in the ordinary sense of that term, but as an agent: Stephens v. Railroad Co., 96 Mo. 207; Chicago etc. R. Co. v. Hoyt, 122 Ill. 369. And Duffey personally and negligently selected the defective timber which caused the injury.

## NO. 104.

OPINION, MR. JUSTICE WILLIAMS:

Walker, the defendant in this action, was engaged in erect-

ing an iron bridge. Duffey was his foreman. Ross was a
laborer employed, with many others, in building the bridge.
He was hurt while so employed, by falling from a scaffold in
consequence of the breaking of a stick of timber which sup-
ported it. The scaffold was built by the workmen, as it was
needed to support the iron work while it was being put in place
in the erection of the bridge. This action was brought to re-
cover damages for the injury so sustained, and the theory of
the plaintiff was that the use of the timber that broke was due
to Duffey's negligence, for which Walker was liable, because
Duffey represented him and was his vice-principal. The de-
fendant, admitting that Duffey was his foreman, denied that he
was liable for the negligence of his foreman in the discharge of
his duty to his fellow workmen. By their fifth point, the de-
fendant's counsel asked the court to instruct the jury, if they
found the defendant put the work in charge of a competent
foreman, and provided suitable materials for the scaffolding in
sufficient quantity, then he was guilty of no negligence and
the verdict must be in his favor. The learned judge refused
the instruction asked for, and went on to say that, "if Duffey
was in the entire charge and control of the work of erecting
the bridge, determining what materials were to be used for
the scaffolding, employing and discharging men, and directing
where and what materials were to be used, he was acting for
Mr. Walker as vice-principal, and his negligence would be that
of the defendant." The correctness of this definition of a vice-
principal is the question raised by the several assignments of
error.

Before considering that question, it is important to recall the
position and duties of the principal; for these cannot be ex-
tended or increased by the circumstance that they are per-
formed through the agency of another person. They may be
stated as follows : It is the duty of an employer to provide his
laborers with a suitable place to work, with suitable tools and
machinery to use, with suitable materials, and with reasonably
competent fellow laborers with whom to work. If they are
young or without experience in the use of the tools or machin-
ery they are to handle, it is his duty to see that they are in-
structed in these particulars, and warned of such dangers as
are peculiar to the use and care of the machinery with which

their labor brings them in contact. Among the more recent of our cases, in which the duties of an employer are stated and applied, are Payne v. Reese, 100 Pa. 301; Rummel v. Dilworth, 131 Pa. 509.

If the principal be a corporation, or be unable for any reason to discharge these obligations in person, they must be discharged through an officer, agent, or foreman. The person who is thus put in the place of the principal, to perform for him the duties which the law imposes, is a vice-principal, and quoad hoc represents the principal so that his act is the act of the principal. This is true, however, only when and so long as his acts are in discharge of the duties which the principal owes to his employees. Beyond this line he acts as a workman, and not as vice-principal. After the workmen have been employed, provided with tools and materials, and the work is actually entered upon, each workman is bound by the nature and terms of service to exercise reasonable care, diligence, and skill in the performance of the work he has undertaken. He is also bound to consider and co-operate with his fellow workmen with a view to promote the success of the industry or undertaking in which they are all engaged. He is as much bound to discharge the duty which the law casts upon him, as is his employer. His failure to do what he is thus bound to do, is a breach of duty towards his employer and his fellow workmen for which he is legally liable. For this reason, the courts have uniformly held that a workman who has been injured by the act or negligence of his fellow workman must look for his compensation to him who was the author of the wrong, and not to their common employer.

The master does not insure his employees against each other, nor is he bound to supervise and direct every detail of their labor. They must exercise their own senses in the selection of material out of the mass provided for them; they must use their own judgments as to the manner of handling it, as to the sufficiency and stability of the scaffolding they erect for themselves, and the amount of burden to be put upon such structures. No employer could bear the burden of legal responsibility for every blunder or neglect on the part of each and all of his employees. The fact that one employee is more skilful than another, or has had greater experience, and is so

deferred to by others, does not change his relation to his employer or to his fellows. Nor does a difference in rank or grade of service change the rule. When the character of the business requires it, the master is as much bound to provide his workmen with a reasonably competent foreman as to provide them with tools, but in either case his liability ceases when he has made a suitable selection. He is neither bound to provide the best tools and machinery, nor the highest grade of skill in his foreman, but he is bound to provide that which is reasonably safe and sufficient in both cases, and having so done he has discharged his duty. What remains to be done is that each workman, whatever his rank or skill or experience, shall, with reasonable diligence and intelligence, discharge his duty towards his employer and his fellows.

It is thus apparent that, whenever it is sought to hold the master liable for the act or neglect of his foreman, the question to be first considered is whether the negligence complained of relates to anything which it was the duty of the principal to do. If it does, then the principal is liable; for he must see at his peril that his own obligations to his workmen are properly discharged. If it does not, he is not liable; for all his workmen are liable to each other for the consequences of their negligence, respectively, and he does not insure them against each other by the mere fact of employing them. These general principles are stated and illustrated in the recent work of McKinney on Fellow Servants, 134–138. They are also applied in a multitude of cases decided by this court, among which are: Patterson v. Railroad Co., 76 Pa. 389; Mullan v. Steamship Co., 78 Pa. 25; Penna. etc. R. Co. v. Mason, 109 Pa. 296; Lewis v. Seifert, 116 Pa. 628; Bier v. Manuf. Co., 130 Pa. 446.

It now remains to apply the rule just stated to the instruction complained of. It was the duty of Walker, as employer or principal, to provide the men employed to build this bridge with suitable machinery and appliances; to furnish materials sufficient in quantity and suitable in character; to employ men who were reasonably competent to do the work for which they were wanted, and to give them the benefit of the services of a reasonably competent foreman. All this, as we understand the evidence, was done. If so, the employer had filled the measure of his legal liability to his workmen. For an error in judg-

ment, or for a neglect of duty on the part of any one of his employees, from the foreman down to the humblest unskilled laborer, he was not liable.    It was not material to this inquiry to know whether "Duffey had entire charge and control of the work" as a foreman or not; nor to know whether he selected from the mass furnished by the employer the materials to be used for any particular purpose or not; nor, whether he hired and discharged men or not.    The inquiry is, was it the employer's duty, after having provided materials ample in quantity and quality, to supervise the selection of every stick out of the mass for every purpose?    To state this question is to answer it.    This was not his duty, and for that reason Duffey, if he did select the timber, which is more than doubtful under the testimony, did not represent Walker as a vice-principal in such selection.    He and his fellow workmen were to judge of the suitability of the pieces of timber they used for the uses to which they put them, and their error in judgment, or their careless discharge of this duty, was their fault or failure, and not that of their employer.    He had discharged his duty when he furnished an abundance of materials from which they could select what was needed.    The actual selection out of this stock, of the sticks needed from time to time, was not his duty, but that of the workmen themselves.    If there was a visible defect in a stick, common prudence and common care on their part would have rejected it, and supplied its place with another out of the stock at their command.

The learned judge seems to have had the true rule in his mind, but in the hurry of the trial he certainly failed to give it clear and adequate expression, and for this reason the assignments of error must be sustained.

The judgment is reversed.

NO. 105.

OPINION, MR. JUSTICE WILLIAMS:

The questions raised by the assignments of error in this case are the same as those in the case of Ross v. Walker, ante, 42, in which an opinion has just been filed.    For the reasons there given, the judgment in this case is

Reversed.