## Ricks v. Flynn.

*Negligence—Master and servant—Fellow-servant—Vice principal—Suitable appliances.*

It is the duty of a master to provide his servants with a safe place in which to work, with proper and suitable tools and machinery with which to perform their work, with suitable materials, with reasonably competent fellow-workmen with whom to work, and with such instruction to the young and inexperienced as may be necessary to warn them against the peculiar dangers incident to the kind of work in which they are engaged.

If an employee be placed in a position to represent his employer so as to have absolute control and entire charge of the work, or a distinct and separate branch of it, then, in the performance of his duties in such representative capacity, he takes the place of the employer, and his acts are those of his principal. An employer is likewise responsible for the acts of his employee if he entrusts him with the performance of an imperative duty absolutely obligatory upon the employer.

The grade or rank of a servant for whose conduct the employer is sought to be made liable is not the test of the employer's responsibility. It is the character or nature of the act of the employee which causes the

| | |
|---|---|
| 196 | 263 |
| 198 | 356 |
| 196 | 263 |
| 19 SC | [1]469 |
| j 19 SC | 470 |
| 196 | 263 |
| j 204 | [3]141 |
| 196 | 263 |
| 205 | [4]298 |
| 196 | 263 |
| 210 | [1]570 |
| p 27 SC | [2]520 |
| 196 | 263 |
| f216 | [2] 38 |
| f216 | [3]561 |
| 196 | 263 |
| 220 | [4]284 |
| 196 | 263 |
| f222 | [3]630 |

injury, that determines the liability of the employer. If the act or thing done resulting in the injury to the employee, is a duty imposed upon the employer, the negligent performance of it by an employee of any grade, will render the employer liable; but if such act was in the line of the ordinary workman's duty as an employee, then the employer is not responsible although the offending employee was a vice principal in charge of the work generally.

Where the foreman of a gang of workmen, even if he is assumed to be a vice principal under his general employment, undertakes the work of one of his gang, and so negligently performs it that another of his workmen is injured, he will be deemed a fellow-servant of the injured man, and his employer will not be liable for his negligence.

A foreman of a gang of workmen engaged in raising stone, according to the plaintiff's evidence, had full control of his men with power to employ and discharge them and in other respects was a vice principal. According to the defendant's evidence, he was an ordinary foreman. The gang was engaged in raising stone to a wall. The stones were raised by means of a derrick. Steel tongs were attached to the chain of the derrick. In each of two opposite sides of a stone holes would be bored, and the tongs would be inserted in them. A signal would be given to the engineer and the stone would be raised. While engaged in this work on the day when plaintiff, who was one of the gang, was injured, the foreman took the place of a workman whose duty it was to hook the tongs on a stone, and without waiting for the second hole in one of the stones to be bored clasped the tongs on the stone, and impatiently ordered the engineer to raise it. The stone slipped from the tongs, fell and injured the plaintiff. *Held* (1) that the foreman whether a vice principal or not under his general employment, was a fellow-servant of the plaintiff in the work of raising the stone which caused the accident; (2) that the drilling of holes in the stones was not an absolute duty imposed on the employer, since the holes were not appliances or tools, but merely a means of adjusting the machinery to the material being removed; (3) that under the evidence binding instructions should have been given for defendants.

DEAN, J., dissented.

Argued March 20, 1900. Appeal, No. 19, Jan. T., 1900, by defendants, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1897, No. 417, on verdict for plaintiff in case of William Ricks v. Patrick H. Flynn, Michael Coffey, John M. Sharp and Michael Connoly, trading as P. H. Flynn & Co. Before GREEN, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Trespass for personal injuries.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $6,240. Defendant appealed.

*Error assigned* was in refusing to give binding instructions for defendants.

*Frank P. Prichard* and *Richard P. White*, with them *Joseph H. Taulane*, for appellants.—The defendants did not place Snyder in the entire charge of the work without exercising any discretion or oversight of their own: Randall v. B. & O. R. R. Co., 109 U. S. 478 ; Quebec S. S. Co. v. Merchant, 133 U. S. 375 ; New York, etc., R. R. Co. v. Bell, 112 Pa. 400 ; Lehigh Valley R. R. Co. v. Jones, 86 Pa. 432 ; Spancake v. Phila. & R. R. R. Co., 148 Pa. 184 ; McGinley v. Levering, 152 Pa. 366 ; Ross v. Walker, 139 Pa. 42 ; Prevost v. Citizens Ice, etc., Co., 185 Pa. 617 ; New England R. R. Co. v. Conroy, 175 U. S. 323 ; Coulson v. Leonard, 77 Fed. Repr. 538 ; Alaska Mining Co. v. Whelan, 168 U. S. 86 ; Northern Pac. R. R. Co. v. Peterson, 162 U. S. 346 ; Briegal v. Southern Pac. R. R. Co., 98 Fed. Repr. 958.

The defendants did not delegate to Snyder any of the absolute duties imposed upon them as employers: Ross v. Walker, 139 Pa. 42 ; Prescott v. Ball Engine Co., 176 Pa. 459.

*Michael J. Ryan*, with him *George McGowan*, for appellee.— The question as to whether Snyder was a vice principal was under the disputed evidence one of fact. As such it was the province of the jury to decide: Coulson v. Leonard, 77 Fed. Repr. 538 ; Evilhock v. Phila., etc., R. R. Co., 169 Pa. 592.

The drilling of the holes was an absolute duty cast upon the master, from which nothing but performance could relieve him : Prevost v. Citizens' Ice, etc., Co., 185 Pa. 617.

OPINION BY MR. JUSTICE MESTREZAT, May 21, 1900 : '

This is an action of trespass brought by a servant to recover damages for personal injuries which he alleges he sustained by reason of the negligence of his master.

At the time the plaintiff received his injuries, he was in the service of defendants, who were then engaged in constructing for the city of Philadelphia a portion of the subway for the tracks of the Philadelphia and Reading Railroad. The men employed in this work were divided into squads or gangs known as the digger and mason gangs, with a separate foreman for each.

The gangs were independent of each other. A mason's gang consisted of masons, two laborers, a " tagman, " and men on the cars to hook the stone with " dogs, " an engineer and a foreman. On the day of the accident two gangs of masons were engaged in building a portion of the retaining wall in the subway between Seventeenth and Eighteenth streets. Snyder was foreman of one of these gangs and Ricks, the plaintiff, was a laborer in the same gang. His duty was to attend the masons. The large stones used in the construction of the retaining wall were removed from the cars to the wall by means of a crane or derrick, operated by a steam engine. Steel " dogs " or tongs were attached to the chain of the derrick. In each of two opposite sides of a stone, holes of not less than one inch in depth were bored, and the " dogs " having been inserted in them, the engineer would raise the stone and the tagman with a rope, would swing it to its place on the wall. This was the usual and customary method of carrying stones from the car to their proper position on the wall. On July 9, 1897, the day of the accident, Snyder was in charge of his gang of masons, and, taking the place of an employee whose duty it was, hooked the dogs on a large stone and ordered the engineer to raise it. When the stone was being swung from the car to the wall it fell from the tongs and, striking a brace on which the plaintiff stood, threw him behind the stone, causing the injuries for which this action was brought. The stone fell because it was raised from the car without having the dogs inserted in holes on two opposite sides of it, or otherwise securely fastened upon it. Snyder knew there was but one hole in the stone when he placed the tongs on it and ordered the engineer to raise it.

The plaintiff and one of his witnesses testified in regard to Snyder's duties and the character of his employment. On this point the plaintiff testified substantially that Snyder's duties were to see that the stones were put in their places and set right in the wall, that he was boss over the work in his section, told the men what to do, employed and discharged men and had full control over the men in his gang and that the witness knew of no one over or superior to Snyder in control of the work. The only other witness called by the plaintiff, who testified to Snyder's position was Thomas Burrell, a laborer in an adjoining mason's gang. He saw the accident. Relative to Snyder's

duties and the nature of his employment, Burrell testified as follow: "Q. When you say foreman, what were his duties? A. He had to see that every hole was drilled and the stone was lowered. If the hole was not drilled to suit him he discharged a man. Q. Had he full power over the men to hire and discharge? A. Full power over the men to hire and discharge. Q. And placing the stones in position? A. Yes; and he takes the measurement of all lengths." The manner in which the accident occurred is thus described by Burrell: "Q. What did Mr. Snyder do there? A. Mr. Snyder was the head boss over the masons. Q. What did he do? A. I suppose Mr. Snyder was raising that day. He couldn't keep up with Mr. Hughes and he was trying to do the best he could. He had a young man there, and he asked him was the stone ready, and he told him no, he hadn't drilled the hole. He said, 'You have been at it long enough to drill two stones;' and he jumped up and down and got angry, and made and hooked on the stones, and didn't give no signal at all, and told the engineer to go anead. Q. Who did that, Mr. Snyder? A. Yes, sir. Q. When the man said he hadn't dug the stone, Snyder said, 'You have had time to dig two stones,' and then he hooked it on and told the engineer to go ahead? A. Yes, sir. . . . Q. Was there or was there not any hole dug in that stone? A. Only on one side. . . . Q. Did he give any signal to the men? A. No, he just started it and the wind blew and the stone went too fast, and the tagman stopped it short, and the boom sprung and the stone jumped out of the hooks. Q. What did the stone do? A. Struck the brace where Ricks was standing on and broke it and Ricks went down behind the stone headforemost." Burrell's version of Snyder's conduct on this occasion and the manner in which the stone was raised and fell is practically not denied by any testimony in the case.

Two witnesses were called by the defendants. They were E. H. Sickles, the city inspector in charge of this part of the work on the subway, and Lawrence T. Oberly, the engineer who was at the engine at the time Ricks was injured. Sickles's testimony was to the effect that Snyder was an ordinary foreman, that he knew some of the defendants and saw two of them at the work every day, superintending it and giving orders to Snyder and the other employees. Oberly testified that he saw

one of the defendants and also the timekeeper of the defendants give orders to Snyder while he was engaged at the work and that he obeyed them.

It was clearly established by the testimony that the usual method of placing the tongs on the stone was by inserting them in holes drilled in opposite sides of the stone. It is not denied that Snyder knew there was but one hole in the stone when he placed the tongs on it and ordered the engineer to raise it. These facts are not controverted and it is apparent that Snyder was guilty of the negligence which resulted in the plaintiff's injuries.

The plaintiff's claim rests upon his allegation that Snyder was a vice principal, and that for his negligence on this occasion the defendants are responsible. The learned trial judge submitted the question of Snyder's negligence to the jury and instructed them that " if the jury come to the conclusion from the evidence that Snyder had charge of the whole work or that he had charge of a distinct and special part of that work, the defendants in this case are responsible for his acts." The verdict was for the plaintiff and on this appeal the defendants contend that under the uncontradicted evidence in the case, Snyder was a fellow-workman of the plaintiff and not a vice principal, and that the court below should have so instructed the jury.

The question raised by this record requires us to notice the duty the master owes to his servant and also to determine when an employee occupies the position of a fellow-servant and not that of a vice principal for whose negligence the master is liable. It is the duty of the master to provide his servants with a safe place in which to work, with proper and suitable tools and machinery with which to perform their work, with suitable materials, with reasonably competent fellow-workmen with whom to work, and with such instruction to the young and inexperienced as may be necessary to warn them against the peculiar dangers incident to the kind of work in which they are engaged: Prescott v. Ball Engine Company, 176 Pa. 459. Having done this, the master has discharged his whole duty to his servant and is not liable for any injury the latter may receive while in his service by reason of the negligence of his colaborer. This doctrine is so well established that it needs

the citation of no authorities to sustain it. If, however, an employee be placed in a position to represent his employer so as to have absolute control and entire charge of the work, or a distinct and separate branch of it, then, in the performance of his duties in such representative capacity, he takes the place of the employer and his acts are those of his principal. An employer is likewise responsible for the acts of his employee if he entrust him with the performance of an imperative duty, absolutely obligatory upon the employer. These principles, as a result of our cases, are concisely and clearly stated by our Brother MITCHELL in Prevost v. Citizens' Ice, etc., Company, 185 Pa. 621, as follows: "A vice principal for whose negligence an employer will be liable to other employees must be either first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not mere authority to superintend certain work or certain workmen but control of the business, and exercising no discretion or oversight of his own; or secondly, one to whom he delegates a duty of his own which is a direct, personal and absolute obligation, from which nothing but performance can relieve him." In the application of this rule, however, the grade or rank of the servant for whose conduct the employer is sought to be made liable, is not the test of the employer's responsibility. It is the character or nature of the act of the employee which causes the injury that determines the liability of the employer. If the act or thing done resulting in the injury to the employee was a duty imposed upon the employer, then the negligent performance of it by an employee of any grade, will render the employer liable, but if such act was in the line of the ordinary workman's duty as an employee, then the employer is not responsible, though the offending employee was a vice principal in charge of the work generally. This rule is sustained by reason and authority. It protects the employer from the act of the employee when not in the discharge of the duties of his principal, and gives redress to an injured employee for a negligent act which should have been performed carefully and properly by the employer. In McKinney's treatise on Fellow-Servants, section 23, the rule is stated as follows: "The true test, it is believed, whether an employee occupies the position of a fellow-servant to another employee or is the representative

of the master, is to be found, not from the grade or rank of the offending or injured servant, but it is to be determined by the character of the act being performed by the offending servant by which another employee is injured; or in other words whether the person whose status is in question is charged with the performance of a duty which properly belongs to the master." In section 233 of Shearman & Redfield on the Law of Negligence, the learned authors, after stating that the master is liable for the negligence of his vice principal in the performance of the duties which are those of the master, say: "On the other hand, the master is not responsible for the negligence of such an agent in the performance of acts which are in no sense part of a master's work and are precisely upon a level with the work of the other servants. When the manager or vice principal undertakes work in simple co-operation with other servants, and upon precisely the same footing with them, he becomes for the time being, a mere fellow-servant with them, acting as such." This doctrine has been adopted and announced by this court. In Ross v. Walker, 139 Pa. 49, the late Justice WILLIAMS, delivering the opinion of the court, said: "The person who is thus put in the place of the principal, to perform for him the duties which the law imposes, is a vice principal, and quoad hoc represents the principal so that his act is the act of the principal. This is true, however, only when and so long as his acts are in discharge of the duties which the principal owes to his employees. Beyond this line he acts as a workman and not as a vice principal."

These principles applied to the facts of the case in hand, relieve it from any difficulty of solution. If it be conceded that Snyder was a vice principal under his general employment by the defendants, which is very doubtful, it is manifest from the indisputable testimony that his negligent act which caused the plaintiff's injuries was performed when he was discharging the duties of a coworkman of the plaintiff and not the personal and absolute duties imposed upon his principal. The defendants provided proper and safe appliances with which to remove the stone from the car to the retaining wall and competent workmen were employed to do the work. There is no allegation of incompetency on the part of the masons, engineer, laborers or the employees whose duty it was to drill the hole

in the stone and to place the dogs on the stone. They were admittedly all competent. Instead, however, of permitting the employees engaged in the work to perform their respective duties, Snyder assumed the duty of a coworker of the plaintiff and placed the tongs on the stone so improperly and carelessly, that the stone fell from their grasp and injured the plaintiff. The work he did was not in the line of his duty as representing his principal, but was strictly that of a fellow-servant of the plaintiff. For his negligent act, therefore, while performing this service, the defendants are not responsible.

The contention of the appellee that the drilling of the holes in the stones was an absolute duty imposed on the defendants is not tenable. The holes in which the tongs were to be inserted in making the removal of the stones were not an appliance or tool to be furnished by the master but simply a means of adjusting the machinery to the material being removed. The stones were shipped on cars to the place where they were to be used. An employee in the gang under Snyder drilled the holes in the stones as part of the work required to be done in their removal. This employee, designated in the testimony as the " stone man," was engaged with the other employees of Snyder's gang in removing the stones from the cars and depositing them on the wall. He was a coworkman of the other servants of the gang, having the same master and being engaged in the same common employment. The thing to be done by Snyder's gang of workmen was the erection of the wall, which included the removal of the large stones from the cars to the wall. The derrick, engine and tongs were the instruments to be used in effecting this removal and they were suitable for the work. Placing the tongs on the stones in a manner to secure their safe removal was the duty of the men who were on the car for that purpose. In this particular instance, Snyder took the place of the men employed for that purpose and if he hooked the tongs on the stone in an improper manner, either by failing to insert them in the holes drilled for the purpose or otherwise, so as to make the removal of the stone unsafe, it was not his act as a vice principal but as a subordinate employee whose duty it was to perform the service. See Ross v. Walker, supra, and Prescott v. Ball Engine Co., supra.

We are therefore of opinion that as the uncontradicted evi-

dence shows that the negligence which caused the plaintiff's injuries is attributable to Snyder as a fellow-workman of the plaintiff and not to him as a vice principal for whose act the defendants are liable, the learned court below should have affirmed the defendants' third point and withdrawn the case from the jury.

The fourth assignment of error is sustained and the judgment is reversed.

Mr. Justice Dean, dissenting:

In my opinion this judgment is wrong; it is not vindicated by reason or authority. The evidence of plaintiff tended to establish the fact, that Snyder, under whose supervision this part of the work was being done, was there as the representative of and in place of his employers, these defendants. On this evidence, under all the authorities, he was a vice principal and his employers are answerable for his negligence.

Assume that there was some conflict in the evidence, still the question was one of fact to be determined by the jury. If the evidence of plaintiff be believed, and the jury in this case did believe it, this man Snyder was neither fitted by temper nor discretion for such a responsible position; one where the lives and limbs of workmen depended on prudent management; by his gross mismanagement and recklessness the plaintiff was seriously injured. Why should not those who placed such a man in such a position, with all the unchecked powers of an employer be held responsible for his negligence? He was no more a fellow-workman of plaintiff than the employers themselves. The tendency to exempt employers from just responsibility for the negligence of supervisors and bosses to whom they entrust such grave duties is in my opinion too pronounced, and will lead to consequences, which, if not now clearly foreseen, can, with very reasonable certainty, be conjectured. I dissent from the judgment.