## Buck *v.* New Jersey Zinc Company, Appellant.

*Negligence—Master and servant—Fellow servants.*

To constitute employees fellow servants in contemplation of the law, they need not at the time be engaged in the same particular work. It is sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purposes.

Where a laborer on a car and a blacksmith are engaged by the same employer in work incident to the erection of a manufacturing plant, and it appears that the blacksmith's employment was to make car links and other things necessary for use in the erection of the plant, the laborer and the blacksmith are fellow servants, and if the laborer is injured by the breaking of a link carelessly made by the blacksmith, the employer is not responsible for the injury.

*Negligence — Master and servant — Furnishing material—Fellow servants.*

A master does not insure his employees against each other, nor is he bound to supervise and direct every detail of their labor. They must exercise their own senses in the selection of material out of the mass provided for them; they must use their own judgment as to the manner of handling it.

Mestrezat, J., dissents.

Argued March 11, 1902. Appeal, No. 256, Jan. T., 1901, by defendant, from judgment of C. P. Carbon Co., Jan. T., 1901, No. 28, on verdict for plaintiff in case of Wesley Buck *v.* The New Jersey Zinc Company. Before Dean, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Craig, P. J.

At the trial it appeared that on December 30, 1899, plaintiff who was employed by the defendant as a laborer on a car was injured by the breaking of an open link used on the car. There was evidence which tended to show that the link had been negligently and carelessly made by a blacksmith in the employ of the defendant. Both the plaintiff and the blacksmith were engaged by the defendant in work connected with the erection of a large manufacturing plant.

The court refused binding instructions for defendant.

[1] Defendant presented among others this point:

The blacksmith that made the link, the laborer who ordered it made and put it on the car, and the plaintiff who worked as a laborer on the car, were fellow servants; they assumed all the risks incident to this work, and the master or employer cannot be held liable for the negligence of either or any of them which resulted in an injury to either. *Answer:* Negatived as a whole, under all the evidence in the case. The testimony is that Mr. Courtright, who was the engineer for construction and

superintendent to a considerable extent, was present when the link was obtained. [5]

Verdict and judgment for plaintiff for $1,750. Defendant appealed.

*Errors assigned* among others were (1, 5) above instructions, quoting them.

*Edward Harvey*, with him *Frederick Bertolette*, for appellant. —Absolute safety is unattainable and employers are not insurers : Purdy v. Westinghouse Co., 197 Pa. 257 ; Titus v. Bradford, etc., R. R. Co., 136 Pa. 626 ; Leonard v. Herrmann, 195 Pa. 222 ; Dickerson v. Central R. R. Co. of N. J., 189 Pa. 567 ; Bradbury v. Kingston Coal Co., 157 Pa. 231 ; Higgins v. Fanning & Co., 195 Pa. 599.

The plaintiff, Beitle, and the workmen in the blacksmith shop were fellow servants : N. Y., etc., R. R. Co. v. Bell, 112 Pa. 400 ; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432 ; Mullan v. Phila., etc., Mail Steamship Co., 78 Pa. 25 ; Ross v. Walker, 139 Pa. 42.

The duty which a master owes to his servant is to provide him with safe tools, machinery and appliances with which to do what is required of him : Mensch v. Penna. R. R. Co., 150 Pa. 598.

*William G. Freyman*, with him *Eugene O. Nothstein*, for appellee.—The legal rule which exempts a master from responsibility for accidents resulting to those in his employ or from those occurring through the neglect of colaborers, does not excuse him from the exercise of reasonable care in supplying and maintaining suitable implements, machinery, tools and appliances for the performance of the work required : Penna. & N. Y. Canal & R. R. Co. v. Mason, 109 Pa. 300 ; Prescott v. Ball Engine Co., 176 Pa. 459 ; Rummell v. Dilworth, etc., Co., 111 Pa. 343 ; Ross v. Walker, 139 Pa. 42 ; Newton v. Vulcan Iron Works, 199 Pa. 646 ; Kennedy v. Alden Coal Co., 200 Pa. 1 ; Lewis v. Seifert, 116 Pa. 647 ; McGuigan v. Beatty, 186 Pa. 332 ; Weger v. Penna. R. R. Co., 55 Pa. 465 ; Tissue v. Baltimore & O. R. R. Co., 112 Pa. 19 ; Bennett v. Standard Plate Glass Co., 158 Pa. 120 ; Huntsinger v. Trexler,

181 Pa. 497; McCray v. Sterling Varnish Co., 7 Pa. Superior Ct. 610; Phila. & R. R. R. Co. v. Huber, 128 Pa. 63; Dooner v. Del., etc., Canal Co., 164 Pa. 17; Elkins v. Penna. R. R. Co., 171 Pa. 121.

OPINION BY MR. JUSTICE POTTER, November 11, 1902 :

The appellant in this case, the zinc company, was engaged in the construction of a large manufacturing plant. For the purpose of grading the ground and carrying cinders and building materials wherever they might be needed during the progress of the operation, temporary railroad tracks were laid. The cars used for this purpose were dump cars, which turned upon an axis running lengthwise of the car, so as to discharge the contents upon either side. In maintaining the normal equilibrium, the body of the car was held in place by short chains fastened upon each side. These chains were composed of four or five links, and each link was some four and one half inches in length. Usually the chains were not tightly drawn, but had considerable play, permitting the body of the car to rock somewhat upon its central axis.

During the progress of the work, the links of the chains were liable to become worn or to break, and whenever this occurred it was customary to substitute for the time being, an open link. Usually two men were assigned to each of the dump cars to see to the loading and unloading, and they were expected to ride back and forth upon the cars. At the time of the accident, the plaintiff was so engaged.

It appears from the testimony that another workman, named Beitle, who was working with the plaintiff, had received orders from the foreman of the yard to watch the cars, and whenever he found a worn link to cut it out, and put an open link in. He testifies that five days before the happening of the accident he did replace a worn link in the chain on the car upon which the plaintiff was employed, with an open link; and that it was then all right; that he took a hammer and welded the open points as close together as possible; that he saw this link just before the accident, and it was then in position and well secured. While the car was in motion, and the plaintiff was sitting upon it, either from a sudden lurch or from some other cause, this open link suddenly broke, permitting the car body

to turn sidewise, and the plaintiff was thrown to the ground. The immediate cause of the accident was therefore the breaking of the link.

These links were not purchased ready-made by the defendant, nor were they prepared in advance of the need for their use. They were made by the blacksmiths upon the premises, when ordered by the men. The defendant company had furnished large supplies of iron suitable for the various needs which might arise during the course of construction. This iron was kept in racks in the supply house, assorted according to size, so that the workmen could make a suitable selection as the occasion arose. The testimony shows that from thirty to forty tons of iron of different sizes were thus kept in store, and three blacksmiths were provided to work it up into the various shapes as required by the workmen. As a witness stated, the blacksmiths did all kinds of work, making the iron up into bolts, hangers, clasps, links, and anything else which was required. They made open links, welded links, and all kinds of links. Whatever the men needed, and asked for, was made by the blacksmiths. When anything of the kind was ordered, the blacksmiths went to the supply house, and selected from the stock of iron there on hand, such as appeared to be suitable for the purpose required, and made it up into links, stirrups, bolts, clasps, and all the things necessary for use in the construction and erection of the plant.

It must be borne in mind that the particular work which was being carried on at that time and place, by the defendant company, was the construction of the new works, and to this end everything was made to bend, and all of the workmen were engaged in carrying out this general purpose. While the plaintiff himself did not procure from the blacksmith the link which broke, yet it was procured by his fellow workman, Beitle, who was engaged in precisely the same duties, and was working side by side with him upon the cars. The particular inquiry in this case is whether the blacksmith who made the link in question was a fellow servant with the plaintiff, and his immediate fellow workman who placed the link in the chain upon the car, and were using it at the time of the accident.

In Lehigh Valley Coal Company v. Jones, 86 Pa. 432, the rule is laid down that to constitute fellow servants in contem-

plation of the law, " they need not at the time be engaged in the same particular work.    It is sufficient if they are in the employment of the same master, engaged in the same common work, and performing duties and services for the same general purposes."

In applying this principle in the case of New York, etc., Railroad Company v. Bell, 112 Pa. 400, it was held that trainmen working on cars, carrying supplies were fellow servants with the men in the shops who had put up a gas pipe for their own convenience, but which resulted in injury to a trainman.

In the present case, if there was any negligence disclosed by the evidence, it was that of the blacksmith, either in making choice of the material out of which he formed the link, or in the exercise of his judgment as to the particular form and shape, which he gave to it.    The link was made at the request of Beitle, and was accepted by him from the hands of the blacksmith, without any objection or criticism as to its form or shape. He took it to the train upon which both he and the plaintiff were working, and placed it in position in the chain.    They were working either upon the same or adjoining cars, and the duties performed by each were practically the same, as they consisted merely in attending to the loading and unloading of the cars. As it happened, Beitle was the one to whom the foreman had spoken, requesting him to look out particularly for the condition of the chains, and directing him to have any worn links replaced by sound ones.    But the plaintiff was employed side by side with Beitle, and all the conditions were equally obvious to him.

The blacksmith shop was open, and the blacksmiths were there for the purpose of making up into the shape desired whatever the men wanted in the way of links or other iron work. Provision was made for direct and immediate communication between the men engaged in the work and the blacksmiths. The iron was furnished in quantities, and in various sizes for varied use as needed, and the blacksmiths were in attendance, not for the purpose of carrying on any separate or distinct department of the defendant's work, but to aid and assist in every way in which their service could be of use to the other workmen, who were, with themselves, all engaged in carrying out one common end,—the construction of the new works.    Under

the circumstances of the common employment at that time and place, the blacksmiths were as truly the helpers and assistants of the other workmen, as would be a blacksmith engaged at a stone quarry or a coal mine, to sharpen or repair the picks and working tools of the quarrymen or miners.

We cannot avoid the conclusion, therefore, that the black-smith and the plaintiff were coemployees. Both were employed by the same master; were engaged in the same circle of employment; each was helping to carry forward in his own way a definite portion of the work directed to a common end. There is no proof in the case that the blacksmith was incompetent or not sufficiently skilled for the purpose of his employment. Nor is there any proof that the iron furnished by the defendant in large quantities was either insufficient or unsuitable.

This case is clearly ruled by the principles laid down in Ross v. Walker, 139 Pa. 49. As was there said, "the master does not insure his employees against each other, nor is he bound to supervise and direct every detail of their labor. They must exercise their own senses in the selection of material out of the mass provided for them; they must use their own judgment as to the manner of handling it." And again (p. 51) : "For an error in judgment or for the neglect of duty on the part of any one of his employees, from the foreman down to the humblest unskilled laborer he (the employer) was not liable."

We are of opinion that the defendant was entitled to an affirmance of its tenth point for charge, which is as follows : "The blacksmith that made the link, the laborer who ordered it made and put it on the car, and the plaintiff who worked as a laborer on the car, were fellow servants ; they assumed all the risks incident to this work, and the master or employer cannot be held liable for the negligence of either or any of them which resulted in an injury to either."

The fourth assignment of error, which is to the refusal of this point, is therefore sustained; as is also the first assignment of error, which was to the refusal of binding instructions in favor of the defendant.

The judgment is reversed.

MR. JUSTICE MESTREZAT dissenting :

I dissent from the judgment entered in this case. A brief statement of the material facts which are not controverted is necessary for a consideration of the question involved.

Wesley Buck, the plaintiff, was employed by the defendant company as a laborer at the time he received the injuries for which the action was brought. The company built a large zinc manufacturing plant at Hazard, in Carbon county. During its construction a temporary railroad track of possibly one mile in length was laid for the purpose of carrying cinder, gravel and other material to be used in grading the ground and in the construction of the buildings. Dump cars drawn by an engine were used on the road. The body of the car was held in place by a chain of five links, each about four and a half inches in length, on either side attached to the truck. When the contents of the car were to be discharged, the chain on the opposite side of the dump would be unloosed.

The work in the construction of the plant was being done by the defendant company ; the labor as well as the cars, appliances, etc., were furnished by it. The cars belonged to the Central Railroad of New Jersey and were leased to the defendant company. On the premises where the plant was being constructed, the defendant had a blacksmith shop at which all kinds of work was done. Near the shop was the company supply house in which were kept large quantities of iron and other material which were subject to the requisition of the employees in the different departments of the work. Five days prior to the accident, Robert Beitle, then a laborer on the gravel train and subsequently plaintiff's fellow workman, went to the blacksmith shop and procured two open links to be be made by the defendant's blacksmith to take the place of links which were worn or broken in the chains on the cars. Mr. Courtright, the chief constructing engineer in charge of the work, was at the shop and Beitle told him that the cars were in a bad condition and that he came there to get a few open links to be used on the gravel train. On his return to the cars, Beitle put the open links in the chains, one in a chain of the car on which the plaintiff subsequently was riding at the time of the accident and which broke and caused his injuries.

The plaintiff was one of a gang of men operating a train of

eight cars on this road in December, 1899.   They loaded and
unloaded the cars and in passing between the points where they
performed this service, they were required to ride on the cars
and were not permitted to ride on the engine.   On the after-
noon of December 30, the cars having been loaded with cinder,
the men took their places upon them and the train started for
its destination.   After it had gone about thirty yards one of
the chains on the car on which the plaintiff was riding broke, the
car was dumped and he was thrown to the ground and seriously
injured.   On examination, it was discovered that the link which
broke was an open one.   Such links are used only in the case
of an emergency, and until the car is taken to the shop where
the chain is repaired with a welded link.   The plaintiff had
been at work less than three days when he was injured, and did
not know there was an open link in the chain until after the
accident.

The learned trial judge in his charge limited the jury to a
consideration of the condition and sufficiency of the link
which broke, as the only ground of negligence on which there
could be a recovery.   He held that the broken link was the
proximate cause of the accident, and submitted to the jury to
determine whether the defendant was negligent in supplying a
link, defective in its construction or in the material of which it
was composed.   He charged that " the defendant was bound
to furnish a reasonably safe link, not only in matter of con-
struction, but as to the constituent elements of it; and while
he is not liable for any latent defects in it, yet he is liable for
negligence in not furnishing the proper material, safe mate-
rial, for that kind of device.   If the link was defectively con-
structed, or was of defective material, then the plaintiff may
recover on both or either of these grounds, if the preponder-
ance of the evidence satisfies you of the correctness of the
plaintiff's contention as to those particulars."

It was the personal, absolute duty of the defendant to pro-
vide the plaintiff with a reasonably safe place in which to
work, and with proper and suitable tools and appliances with
which to perform his work.   This is familiar law.   The fact
that the cars did not belong to the defendant company did not,
as contended by appellant, relieve it from the duty of seeing
that they were reasonably safe.   They were furnished by the

defendant to the plaintiff and his colaborers of the train gang with which to carry or haul the cinder, and that imposed the duty upon the defendant, regardless of the ownership of the cars. Aside from this, however, it was not the cars nor the chain which the defendant hired from the Central Railroad of New Jersey that caused the accident, but the open link made by the defendant company, and by it inserted in the broken chain on one of those cars prior to the time when the plaimtiff entered the defendant company's service. In procuring the link, Beitle was not performing work which made him a fellow servant of the plaintiff, even if the latter had then been engaged on the work, nor was the blacksmith in the construction of the link. The duty in either case was that of the defendant company, without regard to the fact that it was performed by an employee of the same grade as the plaintiff. It is the character of the act which causes the injury to an employee, and not the rank of the coemployee to whom its performance is intrusted, that determines the liability of the employer : Ricks v. Flynn, 196 Pa. 263. When the master delegates to his servant or other agent the performance of a duty obligatory upon him, the agent becomes a vice principal, for whose acts the master is responsible : Lewis v. Seifert, 116 Pa. 628. " But there are some duties," says PAXSON, J., delivering the opinion of the court in the case last cited, " which the master owes to the servant, and from which he cannot relieve himself except by performance. Thus, the master owes to every employee the duty of providing a reasonably safe place in which to work, and reasonably safe instruments, tools and machinery with which to work. This is a direct, personal and absolute obligation ; and, while the master may delegate these duties to an agent, such agent stands in the place of his principal and the latter is responsible for the acts of such agent."

There were no open links in the chain when the cars were received by the defendant from the Central Railroad of New Jersey. The proximate cause of the accident was the breaking of an open link inserted in the chain by the defendant company before the plaintiff was in its service, and not a defect in any other part of the car or in the chain. The case **at bar** very much resembles Philadelphia & Reading R. R.

Co. v. Agnew, 11 W. N. C. 394, though the facts of that case are very much stronger in favor of the defendant. The plaintiff was a brakeman, and was injured by the snapping of a brake chain on a coal train. A chain on one car had snapped and a broken link was found. The evidence tended to show that the broken link was not in the chain when purchased, but had been placed there in the repair shop of the defendant. The plaintiff recovered a verdict and judgment was entered in his favor. In the opinion of this court it is said : " A chain is no stronger than the weakest link in it. There was evidence that the link which broke was not in the coil of the chain welded in the factory, but was put in afterwards at the repair shop of the company. It matters not, therefore, how strong or perfect the other parts of the chain were, this link was weak and imperfect, and the breaking thereof caused the injury. . . . The company was bound to exercise reasonable care in procuring good and strong chains, and in maintaining and repairing them. The verdict establishes they did not do the latter."

In Pennsylvania, etc., R. R. Company v. Leslie, 42 Legal Int. 267, it was held, as stated in the syllabus, that a boiler maker in the machine shop of a railroad company is not such a coemployee or fellow servant with the engineer and fireman of a locomotive as would relieve the company from his negligent manner of repairing the locomotive boiler, whereby the accident was alleged to have occurred. GORDON, J., speaking for the court, says : " How a boiler maker employed in a machine shop can be regarded as a coemployee with a fireman and an engineer in running a locomotive on the railroad, in the sense of making the latter responsible for the negligence of the former, is something that is difficult to understand." So may it be said here : How a blacksmith in a repair shop can be regarded as a coemployee with a laborer on a gravel train in the sense of making the latter responsible for the negligence of the former, is something that is difficult to understand. There is no connection between the two employees; the blacksmith has no business about the cars and the laborer has no business about the shop.

In McKinney on Fellow Servants, sec. 25, it is said : " The agents (of the master) who are charged with the duty of supplying safe machinery, are not, in the true sense of the rule

relied on, to be regarded as fellow servants of those who are engaged in operating it.   They are charged with the master's duty to his servants."

In Wood on Master and Servant, sec. 409, the author says : " The question is whether any fault is imputable to him (the master) either in the selection of mechanics, material, or in the inspection of the machinery when completed.   If so, he is liable whether the machinery was made by his own mechanics or purchased from others."

In an extended note to Mast v. Kern (Ore.), 75 Am. St. Rep. 580, the learned editor, Judge FREEMAN, states the following as deducible from the numerous cases he cites on the subject (p. 623) : " Agents charged with the duty of procuring safe machinery or agents charged with the duty of inspecting and keeping machinery and appliances in suitable repair, are not to be regarded as fellow servants with those employed to labor in the business wherein such machinery and appliances are used, or, in some cases even with those engaged to operate the same. Such agents are, in legal effect, vice principals, and the master is liable for injuries resulting, without contributory negligence, to other servants, through the ordinary negligence of his employee or agent thus charged with the duty of procuring or repairing, whether such negligence be in originally failing to purchase safe machinery or appliances or in failing to keep the same in proper condition for use."

In Lehigh Valley Coal Company v. Jones, 86 Pa. 432, a " mining boss " and a " driver boss" engaged in the mining and removal of coal were held to be fellow servants.   But it must be observed that both employees were engaged in the same general business of getting out coal under the orders of a general superintendent.   They were performing parts of one common service.   Neither was furnishing tools or appliances to the other, nor in any other way performing towards the other the duty of an employer.   This observation applies to the case of N. Y., etc., R. R. Co. v. Bell, 112 Pa. 400.

In Ross v. Walker, 139 Pa. 42, relied upon by the majority of the court, the plaintiff, a laborer employed in building a bridge, was injured by the breaking of a defective timber supporting the scaffolding on which he worked.   " The scaffold was built by the workmen as it was needed to support the iron

work while it was being put in place in the erection of the bridge." This court held, and it was the principal question decided, that it was not the duty of the employer, after having provided materials ample in quantity and quality, to supervise the selection of every stick of timber out of the mass for every purpose. With that conclusion, I heartily agree. In the case at bar, if the plaintiff had been a blacksmith and had been furnished with proper material by the defendant and had made the link which, breaking, caused his injury, the case would have been similar to the one cited. But the difference in the facts of the two cases is clearly apparent. The reasoning in the opinion in Ross v. Walker sustains the position assumed here. Justice WILLIAMS, in delivering the opinion of the court, holds that it is the duty of the master to provide suitable appliances for his employees, and that for any negligence in the performance of this duty imposed upon the master, he is responsible, regardless of the grade or character of the person who performs it. He says: " The person who is thus put in place of the principal, to perform the duties which the law imposes, is a vice principal, and quoad hoc represents the principal so that his act is the act of the principal."

In my judgment the case at bar carries the fellow servant rule far beyond any other case in the books. It makes an employee who acts for, and performs the duty of, his principal, a colaborer of another employee who is injured by the failure of his employer to furnish him suitable appliances with which to work. It was the duty of the defendant company under all the decisions to furnish reasonably safe cars, including the chains, and to maintain them in that condition. It did furnish cars, but they were unsafe before, and at the time, the plaintiff entered its service. It is a truism, having, as we have seen, the judicial sanction of this court, that a chain is no stronger than its weakest link. Supplying a link, found by the jury to be defective, was the furnishing of a defective chain which was a necessary and constituent part of the car which the law required to be reasonably safe when delivered to the plaintiff.

An important and controlling fact in the case, it seems to me, is that when Beitle procured the link and inserted it in the chain, the plaintiff was not in the service of the company. He entered it two days subsequent. Even if Beitle were a fellow

servant of the plaintiff at the time the latter was injured, he was clearly not such when he procured the defective link and put it in the chain.

With due deference to the majority of the court, the defendant company is clearly and unquestionably responsible for the condition of the car when it put the plaintiff in charge of it. The case was therefore for the jury and having been submitted with proper instructions by the learned trial judge, I would affirm the judgment of the court below.