## O'Neal, Appellant, *v.* Clydesdale Stone Company.

*Negligence—Fellow-servant—Master and servant—Quarry tagman.*

Where it is the duty of a tagman in a quarry to see that holes are properly made in a stone about to be moved, so as to receive the steel tongs or " dogs," and to see that the " dogs " are in good condition, and that they are properly adjusted in the stone, and also to warn workmen when a stone is about to be swung in the process of loading, and the tagman fails in any of these duties, and a workman in the quarry is injured, such workman cannot recover damages for his injuries from the operator of the quarry.

Argued Oct. 19, 1903. Appeal, No. 83, Oct. T., 1903, by plaintiff, from judgment of C. P. Lawrence Co., June T., 1901, No. 101, on verdict for defendant in case of James O'Neal v. Clydesdale Stone Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before PATTON, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Oscar L. Jackson*, with him *Frank A. Blackstone*, for appellant.

*J. Norman Martin*, for appellee.

OPINION BY MR. JUSTICE POTTER, January 4, 1904 :

This action was brought to recover damages for personal injuries, which were alleged to have been caused by the negligence of the defendant company. Under the view taken by the trial judge, no negligence upon the part of the defendant was shown, and binding instructions to find in its favor were given to the jury. From this action of the court, the plaintiff has appealed.

We find from the record in this case that the defendant, the Clydesdale Stone Company, is the owner of several quarries in Lawrence county, and is a corporation engaged in the business of quarrying and shipping by railroad large, heavy sandstone. The plaintiff, James O'Neal, was a quarryman, who had been in defendant's employ for two years, and had been engaged in that trade for over thirty years. On October 13, 1900, he was occupied with another workman, Tony Barr by name, in the defendant's quarry. Plaintiff was sitting on a " bench," or ledge, while Barr was on a small ledge beneath him. While in this position, plaintiff was injured by a large stone, which was being swung over his head by means of a derrick, and which broke loose from the steel tongs or " dogs " which held it. It appeared that the " dogs " were usually inserted by a " tagman," William Watkins ; that it was his duty to see that holes were drilled in both sides of the stone ; that, if this had not been done by the quarryman, whose primary duty it was, it was his duty to make the hole. Tony Barr testified that he saw the tagman put the hooks on the stone ; that there was but one hole in it, and that the tagman inserted one hook in the hole and placed the other beneath the stone. O'Neal and Barr testified that they heard no warning before the stone came, but Barr testified that some one "hallooed " when the stone was slipping out. Watkins, the tagman, testified that it was his custom to call " heads up," or " look out," when a stone was being swung around, but he did not know whether he gave notice at the time of the accident or not. Several witnesses testified that it was customary to swing the stone over the men's heads, and that it was

necessary on this occasion, as the pile of stone which was being loaded on the siding was near the track, and the "stiff leg," or derrick, came down between the stone pile and the car. Other stones had been swung in the same manner on that day. The stone that caused the accident was the first one to be swung after dinner. Several witnesses testified that Charles Hildebrand, the superintendent, had given general orders that the stone be taken from the pile in question to the car, but that he was not present when the stone was swung, being in the office of the quarry at the time. Charles Hildebrand, superintendent, testified that he had instructed the tagman to give notice when the stone was being swung, at the time when he came to work for defendant. Plaintiff testified that the "dogs" were worn smooth; but, on cross-examination, admitted that it was the business of the tagman to sharpen them, and that he, plaintiff, saw the dogs every day. None of the witnesses saw the stone strike the plaintiff. The evidence tended to show that it struck near him, and either knocked him from the ledge, or, that he jumped off and was hurt by the stone at the bottom. Plaintiff testified that there was a ledge of rock in front of him, so that he could not have seen the stone even if he had been looking up.

Whether the accident resulted from failure to see that the holes were properly made in the stone to receive the "dogs," or whether the "dogs" were not properly adjusted therein, or because the "dogs" were not in good condition; in any of these events, the failure in duty was upon the part of the "tagman," Watkins. To him also must be attributed the lack of warning, when the stone was swung around, if any such there was.

The testimony makes it perfectly clear that whatever negligence there was in the case must be attributed to Watkins.

It is equally clear, under the authority of Ricks v. Flynn, 196 Pa. 263, and the principles which are there so fully set forth by our Brother MESTREZAT, that the tagman was a fellow-workman with the plaintiff, for whose acts of omission the defendant company could not be held liable. The facts in that case are similar to those in the present case, and its determination is controlling here.

There are no grounds upon which to base the suggestion of counsel for appellant, that the defendant company failed in the

duty of providing a reasonably safe place to work. The place was as safe as a stone quarry could reasonably be expected to be. The danger and disaster grew out of the failure of a fellow-workman to exercise proper precautions in discharging his duty in the use of appliances provided for the work in the quarry.

The view taken by the learned trial judge was entirely correct.

The assignments of error are dismissed and the judgment is affirmed.