179    437
19 SC  469

# Patrick J. Toohey *v.* The Equitable Gas Company, Appellant.

*Negligence—Master and servant—Risks of employment—Injury to servant—Suitable appliances—Explosion of natural gas.*

Where it is the duty of a field superintendent of a natural gas company to supervise the testing of wells, he cannot recover from the company for injuries caused by the explosion of a valve on a fitting which he himself selected from the company's stock and adjusted for the test.

In an action by a field superintendent of a natural gas company to recover damages for personal injuries caused by an explosion of gas, it appeared that one of the duties of the plaintiff was to shut in and test gas wells. The company provided a stock of suitable fittings from which the plaintiff could select such as were needed in any given case. Before the well which exploded was tested plaintiff, without conference with or advice from any officer of the company, selected an eight inch valve, and caused it to be placed in the well. Among the stock of valves was a ten inch valve which plaintiff could have selected. After the valve had been put in place, the president of the company in answer to a question of plaintiff stated that these valves were supposed to be good for over a thousand pounds. The explosion occurred at a pressure of from six hundred and fifty to seven hundred and twenty pounds. Two out of three valves subsequently tested withstood a pressure of one thousand pounds, and the third of nearly one thousand pounds. *Held*, (1) that the evidence was insufficient to show that the company was guilty of negligence; (2) that the danger involved was one of the risks of plaintiff's employment; (3) that the opinion expressed by the president was immaterial; (4) that whether the explosion was caused by the lightness of the fitting, or by such a concealed defect in the valve as reasonable care could not detect, the defendant was not liable; (5) that a verdict and judgment for plaintiff could not be sustained.

Argued Nov. 2, 1886.   Appeal, No. 114, Oct. T., 1896, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 487, on verdict for plaintiff.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ.   Reversed.

Trespass for personal injuries.   Before WHITE, J.

At the trial it appeared that on June 24, 1892, plaintiff was injured by the bursting of an eight inch valve used in the testing of the pressure of a gas well of the defendant company. The circumstances of the accident are stated in the opinion of the Supreme Court.

The court charged in part as follows :

[The plaintiff testified that the day before the final testing of the well he had a conversation with Mr. Brown, the president of the company, when he expressed his fears of an accident, or of danger, at least, in testing the well with the gate valve then on it. He had a conversation with Mr. O'Donnell the day before that, perhaps, or on that day—I think he said the day before the conversation with Mr. Brown, in which he said he didn't like to test the well, that he was present at a well where a man was killed, and he said something to Mr. O'Donnell about whether this gate valve was sufficiently strong. Mr. O'Donnell did not reply. There is nothing in that to enable the plaintiff to recover, because he was not misled in any way by anything that Mr. O'Donnell said or failed to say. But, he said in conversation with Mr. Brown, Mr. Brown said it would bear a pressure of upwards of one thousand pounds. Now, Mr. Brown denies that he used such an expression or said anything of the kind, but says that he knew nothing about these valves, knew nothing on the subject, that it was Mr. Toohey's duty to see to those things and he relied upon his men. Now, the first question here is: Did Mr. Brown use that expression? And the next question would be what effect it had on the plaintiff. What was the meaning of that expression? Suppose he said to the plaintiff, "It will bear a pressure of upwards of a thousand pounds." Was there any guaranty that it would? Was it anything more than a mere expression of opinion on the part of Mr. Brown? Did Mr. Brown know as much on the subject as Mr. Toohey himself did? It was Mr. Toohey's business. He had been testing wells for two years. He had put on these very valves. Did he not know as much as or more than Mr. Brown? In other words, did that expression of Mr. Brown induce him to take part in the testing of that well? But even if you find, gentlemen, that Mr. Brown did use that expression, that, of itself, will not justify a verdict for the plaintiff. You must go further. You must believe that the expression removed the fears that the plaintiff had on the subject, and induced him to take part in the testing of the well.] [3]

Defendant's point and answer thereto were as follows :

That under the pleadings and all the evidence the verdict

must be for the defendant. *Answer:* The above point is re-fused. [1]

Verdict and judgment for plaintiff for $2,556. Defendant appealed.

*Errors assigned* among others were (1, 3) above instructions quoting them.

*Johns McCleave,* with him *D. T. Watson,* for appellant.—If the master had no reason to suppose that the device which caused the injury was not safe, he is not liable. He is only bound to furnish machinery and tools which are reasonably safe: Faber v. Carlisle Mfg. Co., 126 Pa. 387. The master is bound to furnish appliances of ordinary character and reasonable safety only: Titus v. Bradford, B. &. K. R. R., 136 Pa. 618.

*A. M. Brown,* with him *Thomas M. Brown,* for appellee.—The duty which a master owes to a servant is to provide him with safe tools and machinery: Baker v. R. R., 95 Pa. 211; Mc-Combs v. Pittsburgh & W. Ry., 130 Pa. 182; Del. River Engine Works v. Nuttall, 3 Del. County Rep. 401; Kinney v. Corbin, 132 Pa. 343; Diehl v. Iron Co., 140 Pa. 487. One who is hired to perform a special work, but is set to perform a different and more dangerous task, without being first informed of its danger, or having an opportunity to notice it, may recover damages for an injury sustained: Pittsburg R. R. v. Sentmeyer, 92 Pa. 276; Payne v. Reese, 100 Pa. 301; Bier v. Mfg. Co., 130 Pa. 446; Glossen v. Gehman, 147 Pa. 619; Murphy v. Crosan, 98 Pa. 495; Lee v. Electric Light Co., 1 Lackawanna Jurist, *19.

OPINION BY MR. JUSTICE WILLIAMS, January 4, 1897:

The business of the defendant corporation was the production, transportation and sale of natural gas. The plaintiff was employed as a field superintendent by the defendant. His business included a general oversight over the drilling of gas wells, over the shutting in and testing of wells in which gas was found, and over the connecting of such wells, with the general line, as showed a sufficient pressure of gas for that purpose. He had occupied the same position for about two years and was familiar with its duties and its dangers. In June, 1892, while engaged in shutting in a new well, known as the Kidd well,

and testing its pressure, he was injured by the explosion of a valve; and this action was brought against his employer to recover damages for the injury sustained at that time. The right to recover rests on an allegation of negligence on the part of the gas company in not providing the plaintiff with "suitable fittings and instrumentalities for the duty and work required of said plaintiff, and for safely undertaking and accomplishing the purpose of shutting off the gas well." The statement filed by the plaintiff alleges that the fittings and instrumentalities actually furnished were wholly insufficient, and that because of such insufficiency they exploded under the pressure of the gas without any fault or want of care or skill on part of the plaintiff, whereby the injury complained of was received. The evidence showed the employment of the plaintiff as field superintendent, and that the shutting in, and testing of new wells were under his control. It also showed that the fittings used to bring the gas produced by the well under control so that it might be turned into the line were kept in stock by the gas company at a place called Sardis; and that the plaintiff was authorized to make, and did make from time to time, a requisition upon the clerk in charge of these fittings for such of them and of such sizes as he desired to use in testing and connecting new wells. The valves on these fittings were of six, eight and ten inches diameter, and their relative weight and strength increased with the diameter of the valve.

When the Kidd well was finished the plaintiff says it was apparent that it was a stronger well than most of the wells in that general region, and would yield a greater volume of gas, and show a higher pressure. He sent to Sardis for the fittings to be used in closing and testing the well, selecting for this purpose a fitting with a six inch and an eight inch valve. These fittings were put in place, and the gas allowed to escape into the air. On the following day O'Donnell the superintendent of the defendant came on the ground with a gauge to ascertain the pressure of the gas, and with him two or three other persons. The gauge was put in place, the gas turned on, and when a pressure variously stated at six hundred and fifty to seven hundred and twenty pounds was reached the eight inch valve gave way and the plaintiff was hurt. The evidence shows that the plaintiff, without conference with or advice from

any officer of the defendant company, selected and ordered the fittings and valves to be used, and placed them or caused them to be placed upon the well. When O'Donnell arrived all the preparations needed for the use of the gauge had been made by the plaintiff, so that it was only necessary to put the gauge in position and turn on the gas. Neither the choice of the fittings to be used nor the manner of their application appear to have been influenced in the slightest degree by any one connected with the defendant company. On the contrary this was left wholly to the judgment of the plaintiff as field superintendent. He had his choice among the several sizes and knew, as he says, that ten inch valves were in stock and could have been had for the asking. He ordered the six and eight inch valves of his own motion, and made the preparations for the test of pressure just as he pleased. All that was done after the arrival of O'Donnell was to attach the gauge and turn on the gas. Under all the evidence it seems difficult to see that the defendant was guilty of any negligence. It furnished a stock of fittings from which it was the business of the plaintiff to select such as he thought to be sufficient for his use in any given case, and if it turned out that the fittings were too light, or reduced in efficiency by some unknown defect that a careful examination would not disclose, the defendant cannot be charged with negligence in either case. But it is said that the president of the company expressed an opinion that should make the company liable in this case. What the testimony shows upon that subject is that after the plaintiff had selected the fittings and put them in place he asked the president how much pressure those fittings were supposed to withstand, and that the answer was that they were supposed to be good for over a thousand pounds. But this opinion whether correct or not did not influence the selection, for that had been already made; nor the use of the fittings, for they were then in position, having been put in place by the plaintiff. But the opinion seems to have been substantially correct. Three of the eight inch valves were soon after tested. Two of them withstood a pressure of one thousand pounds successfully. The third gave way at a little less than one thousand pounds. The explosion at which the plaintiff was injured took place at a pressure not more than seven hundred and twenty, and O'Donnell and another say it was six

hundred and fifty. It was much less at all events than that successfully resisted by either of those subsequently tested. But whether the opinion expressed by the president was correct or not, it does not seem to have influenced the choice or use of that eight inch valve in this case. The shutting in and testing of this well was part of the business of the plaintiff as the field superintendent of the defendant company. The risk it involved was a risk incident to his business, a risk which he assumed in accepting the superintendency of field work. The duty of the company was to provide a stock of suitable fittings from which the plaintiff could select such as were needed in any given case. The duty of selecting was on him: Ross v. Walker, 139 Pa. 42. If he selected such as were really too light for the pressure to which they were to be subjected the negligence was not that of the defendant, but was his own. If the explosion was due to some concealed defect in the fittings such as reasonable care could not detect or provide against, whatever might be the responsibility of the manufacturer, the explosion was as to the gas company and its employee, an accident due to causes not under the control of either.

The first specification of error is sustained and the judgment is reversed.