# O'Dowd v. Burnham, Appellant.

*Negligence—Master and servant—Relative duties of employer and employee.*

The duty of an employee is to use his senses in all that relates to his employment, to exercise attention and care in the selection of material from the mass provided for general use, and to provide with reasonable diligence for the safety of himself and his coemployees in his management of his share of the work to be done.

The master does not insure his employees against each other nor is he bound to supervise and direct every detail of their labor. They must exercise their own sense in the selection of material out of the mass provided for them; they must use their own judgment as to the manner of handling it. No employer could bear the burden of legal responsibility for every blunder or neglect on the part of each or all of his employees. The fact that one employee is more skillful than another, or has had greater experience, and is so deferred to by others, does not change his relation to his employer or to his fellows. Nor does a difference in rank or grade of service change the rule. When the character of the business requires it, the master is as much bound to provide his workman with a reasonably competent foreman as to provide them with tools, but in either case his liability ceases when he has made a suitable selection. He is neither bound to provide the best tools and machinery, nor the highest grade of skill in his foreman, but he is bound to provide that which is reasonably safe and sufficient in both cases, and having done so he has discharged his duty.

*Negligence—Master and servant—Risk of employment—Machinery.*

Where an accident results from an unforeseen cause not discoverable in advance of its occurrence, with no visible defect in any part of the machine, and no knowledge of any defect on the part of the men who were constantly using the machinery, or of the employer, the accident is one of the ordinary risks of the employment which the servant takes upon himself.

Whenever an employee discovers anything affecting the safety of the machinery or tool or appliance, which he is obliged to use, and his judgment based on his experience gives notice of imminent danger in using it with skill and care so that it would be reckless to use it, the employer is not liable.

*Negligence—Master and servant—Risk of employment—Machinery—Choice of appliances.*

In an action to recover damages for personal injuries sustained by the plaintiff while working in a large locomotive works, it is error to submit the case to the jury where the evidence showed that the plaintiff worked under the foreman of the boiler shop; that the foreman was several removes in rank of employment from the defendants as principals; that it was not shown that he was incompetent; or that the defendants had reason to

believe him to be incompetent; that the accident occurred in the evening two hours after the foreman quit work; that in the afternoon, the foreman had ordered the plaintiff to move, by means of a traveling crane, certain material; that in the course of the afternoon a hook used in the work broke; that plaintiff took the broken hook to the foreman to have it fixed, but had been told to go on with his work; that it appeared that the work could have been done either by means of a hook in connection with the crane, and the material, or by means of a bolt and a nut attachment, both of which were available to the plaintiff; that on previous occasions the foreman had directed the use of the hook instead of the other appliances; that in the evening after the foreman had gone plaintiff attempted to move a very heavy piece of metal by means of a hook, which he had selected from a number on hand, instead of the bolt and nut attachments; and that the hook which he had selected broke in the progress of the work, resulting in the injuries for which suit was brought.

Argued Oct. 10, 1901. Appeal, No. 8, Oct. T., 1901, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1900, No. 260, on verdict for plaintiff in case of Dominick O'Dowd v. George Burnham, William P. Henszey, John H. Converse, William L. Austin, Samuel H. Vauclain, Alba B. Johnson and George Burnham, Jr., trading as Burnham, Williams & Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before BRÉGY, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*John G. Johnson*, with him *James Wilson Bayard*, for appellants.—The undisputed evidence is that defendants furnished a sufficient stock of the proper tools for plaintiff's work.

There is no evidence that the defendants' foreman, Connery, directed the plaintiff to use defective or insufficient tools.

The defendants having furnished a sufficient stock of proper tools, if their foreman, as alleged, directed plaintiff to use a defective tool or not to use an admittedly proper tool, he acted, not as a vice principal for defendants, but as a fellow workman of the plaintiff, and for such acts defendants are not responsible:

Ross v. Walker, 139 Pa. 42; Kinney v. Corbin, 132 Pa. 341; Ricks v. Flynn, 196 Pa. 263; Capasso v. Woolfolk, 163 N. Y. 472; 57 N. E. Repr. 760; O'Brien v. American Dredging Co., 53 N. J. L. 291; 21 Atl. Repr. 324; Curley v. Hoff, 62 N. J. L. 758; 42 Atl. Repr. 731; Johnson v. Boston Tow Boat Co., 135 Mass. 209; Alaska Mining Co. v. Whelan, 168 U. S. 86; 18 Sup. Ct. Repr. 40; Kalleck v. Deering, 161 Mass. 469; 37 N. E. Repr. 450; Bemisch v. Roberts, 143 Pa. 1; Prescott v. Ball Engine Co., 176 Pa. 459.

*Charles J. Sharkey*, with him *F. Pierce Buckley*, for appellee. —The tools and appliances furnished by defendant were insufficient and defective: Honifius v. Chambersburg Engineering Co., 196 Pa. 50; Newton v. Vulcan Iron Works, 199 Pa. 646; Skelley v. Crutchfield, 17 Pa. Superior Ct. 200.

Connery had entire control of the shop and directed the plaintiff to use the hooks: Fick v. Jackson, 3 Pa. Superior Ct. 382.

OPINION BY ORLADY, J., March 14, 1902:

The plaintiff was employed by the defendants, who are locomotive manufacturers and operate a large plant composed of many separate buildings. One Connery was a foreman in the boiler shop in which the plaintiff worked, and was in charge of a gang of three or four men. Connery ordered the plaintiff to transfer, by means of a traveling crane, certain material from where it had been delivered to where it was to be used. The material consisted of castings of different sizes and weights and to effect its transfer the pieces were made fast to the crane by slings or hooks which consisted of short chains with either a hook or a bolt and nut at one end to be inserted in the holes in the pieces to be moved, and at the other end a ring which was placed on the hook of the chain depending from the crane. There were a number of these slings of different sizes and design, for use in moving pieces of different weight. The plaintiff directed the removal of the pieces from the wagons, fastened them to the slings, and gave directions to the man who operated the crane where they were to be taken. Connery was present at the time the plaintiff was unloading the pieces from the wagons when one of the hooks in use broke. The accident is described by the plaintiff as follows: " I took

the chain and the hook—the broken one—in my hand and followed him (Connery) to his desk and asked him if he would send a man to get the hook fixed and he said, 'No; let her go until Monday, go on with your work.' I thought it was all right then, and I went back to my work, and I had to work until twelve o'clock that night, and between eight and nine o'clock I was hoisting another part of the boiler on this single hook, and it broke and fell and catched me on the foot and took three of my toes off." The plaintiff also testified that, some time prior to this accident, material, when being moved, was attached to the crane by putting a bolt through a hole in the piece to be moved and fastening a nut on the bolt on the under side, and that "Mr. Connery said it was too slow and told me to get hooks—that it was smarter work—quicker work—and I told him that I thought those hooks were not strong enough, and he asked me who was boss, me or him, and I said, you are boss and he said go and do what I tell you." The hooks had been in use for several weeks before the accident occurred. As to the plaintiff's control over the appliances he said: "Q. Do all the slings have two hooks, or do some of them have only one? A. There was only one that had two hooks. Q. How many were there that had one hook? A. Three more. Q. Were they of different weight, or were they of about the same strength? A. The one that hurt me was about the strongest there was. Q. You chose each one, I suppose? A. Yes, sir. Q. And you could get any one of the four you wanted at any time? A. Yes; if I wanted them, if I thought they were strong enough. Q. You said something about using chains with bolts? A. Yes, sir. Q. Some of those were there too? A. They were there too, two chains attached to the same ring with bolts and nuts. Q. How many of them were there? A. There were four. Q. And you used those when you thought the thing was too heavy? A. I wouldn't get permission to use them. Q. Who decided that? A. Mr. Connery."

The negligence of the defendants, as urged in the plaintiff's statement, was that they "carelessly, negligently, and knowingly allowed a defective, dangerous, and unsafe hook to be attached to a chain connected with said crane, that said hook broke and dropped the piece of iron then being carried." It is

not claimed either in the pleadings or in the evidence that the foreman, Connery, was incompetent, or that the defendants had any reason to believe him to be incompetent. Connery was not present at the time the accident happened, and did not direct the use of the particular chain or sling which caused the accident; and it does not appear that the hook broke on account of any observable defect, nor that the hook which broke during the afternoon had anything to do with this accident. O'Dowd had the several chains before him from which to select one which would serve the purpose of lifting the casting. He was not bound to adopt or use any special one; and if, in his judgment, the hook was not strong enough to lift this throat piece, weighing 800 or 1,000 pounds—the heaviest he had ever seen—he was bound to take notice of an obvious danger: Devlin v. Phœnix Iron Company, 182 Pa. 109. There was nothing in the direction given by Connery in regard to using the hooks to prevent the use of the leg chain with bolt and nut for this especially heavy piece. The plaintiff was bound to exercise his own judgment in the selection of the tools at his command. If through a mistake in judgment the hook or chain selected by the plaintiff for use was unsuited for the purpose for which it was wanted and the accident was due to this, he cannot recover. The duty of the employee is to use his senses in all that relates to his employment, to exercise attention and care in the selection of material from the mass provided for general use, and to provide with reasonable diligence for the safety of himself and his coemployees in his management of his share of the work to be done: Prescott v. Ball Engine Company, 176 Pa. 459.

The measure of liability is clearly defined in Ross v. Walker, 139 Pa. 42: "The master does not insure his employees against each other, nor is he bound to supervise and direct every detail of their labor. They must exercise their own senses in the selection of material out of the mass provided for them; they must use their own judgment as to the manner of handling it. No employer could bear the burden of legal responsibility for every blunder or neglect on the part of each or all of his employees. The fact that one employee is more skillful than another, or has had greater experience, and is so deferred to by others, does not change his relation to his employer or to his

fellows. Nor does a difference in rank or grade of service change the rule. When the character of the business requires it, the master is as much bound to provide his workman with a reasonably competent foreman as to provide them with tools, but in either case his liability ceases when he has made a suitable selection. He is neither bound to provide the best tools and machinery, nor the highest grade of skill in his foreman, but he is bound to provide that which is reasonably safe and sufficient in both cases, and having done so he has discharged his duty:" Toohey v. Equitable Gas Co., 179 Pa. 437; Devlin v. Phœnix Iron Co., 182 Pa. 109; Ricks v. Flynn, 196 Pa. 263; see also Augerstein v. Jones, 139 Pa. 183. Where an accident results from an unforeseen cause not discoverable in advance of its occurrence, with no visible defect in any part of the machinery, and no knowledge of any defect on the part of the men who were constantly using the machinery, or of the employer, the accident is one of the ordinary risks of the employment which the servant takes upon himself: Bradbury v. Kingston Coal Co., 157 Pa. 231. Some specific negligence on the part of the master must be shown: Wojciechowski v. Spreckel's Sugar Refining Co., 177 Pa. 57.

If the accident was due to a concealed or latent defect in the hook, such as reasonable care would not detect or provide against, the employer would not be liable: Toohey v. Equitable Gas Company, 179 Pa. 437. It is not alleged that the tools furnished were old and worn, or had not been inspected, nor that they were in an unsafe condition, as in Honifius v. Chambersburg Engineering Company, 196 Pa. 47; Newton v. Vulcan Iron Works, 199 Pa. 646, and Dyer v. Pittsburg Bridge Co., 198 Pa. 182, the sole objection by the plaintiff being that " the hooks were not strong enough." They had been in use but three or four weeks, and whether the hook was not strong enough to safely lift the particular casting was for the plaintiff to decide, as Connery was not present. Whenever an employee discovers anything affecting the safety of the machinery or tool or appliance, which he is obliged to use, and his judgment based on his experience gives notice of imminent danger in using it with skill and care so that it would be reckless to use it, the employer is not liable. The plaintiff was not an ordinary laborer but the person in full charge of all the tools and

470 O'DOWD *v.* BURNHAM, Appellant.

Opinion of the Court—Dissenting Opinion. [19 Pa. Superior Ct.

appliances with which he was to do particular work. The application of the rule might be different had one of the men under him been injured, as in Ricks v. Flynn, 196 Pa. 263, but he had the right of selection from a number of tools. If another hook had been used the accident might not have happened; if so, surely the employer should not be made to pay for plaintiff's error of judgment.

Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger but of negligence: Leonard v. Herrmann, 195 Pa. 222; Purdy v. Westinghouse Electric & Mfg. Co., 197 Pa. 257.

It was clearly proven that Connery was several removes in rank of employment from the defendants as principals, his immediate superior being John Morgan, who in turn was subject to the direction of others. Connery's duty in the shop ended at six o'clock and the accident did not occur until two hours later, but the night foreman has not been connected with the accident in any manner. Assuming that Connery was the foreman of that shop, the accident was caused by either the plaintiff's mistake in judgment as to the strength of the hook, for which the employer is not responsible, or it was due to the direction of Connery to use the hooks instead of the bolt and nut attachments. In the latter view, under authority of McGinley v. Levering, 152 Pa. 366, and the cases therein cited, and Prevost v. Citizens' Ice, etc., Company, 185 Pa. 617, Duncan v. A. & P. Roberts Co., 194 Pa. 563, Connery was a fellow-workman with the plaintiff and there cannot be a recovery.

The judgment is reversed.

SMITH, J., dissenting:

I regard the present case as one to which the view expressed by Mr. Justice DEAN, in dissenting from the judgment of the Supreme Court in Ricks v. Flynn, 196 Pa. 263, is strikingly applicable. Said he :

"The tendency to exempt employers from just responsibility for the negligence of supervisors and bosses to whom they entrust such grave duties is in my opinion too pronounced, and will lead to consequences, which, if not now clearly foreseen, can, with very reasonable certainty, be conjectured."

The tendency to narrow the scope of the vice principal's ac-

tion as the master's representative, to obliterate the distinction between the vice principal and those over whom he is placed, and to regard them merely as fellow servants with respect to the master's responsibility, has not infrequently resulted in hard cases, which, in turn, have established bad precedents, and these, if followed, will lead to still harder cases.   In justice to the workingman, the power delegated to any subordinate should be attended with a corresponding measure of accountability on the part of the master.   There is no safe ground for a distinction between acts of the vice principal as representative of the master, and his acts in matters accessory or collateral to his functions as vice principal.   In all affairs under his charge he should be held the master's representative.   His subordinates are in no position to determine or even to consider the character in which he may for the moment be acting, or to differentiate the acts of a vice principal from those of a fellow servant.   To them, he is at all times the boss, and his orders are the orders of the master.   Obedience to him, at all points, is the first element in the tenure of their employment. They cannot disregard any direction he may give, on the ground that he is, for the time and the occasion, acting only as a fellow servant, with no responsibility on the part of the master for his acts or omissions.   He has all the power of the master in the premises, and for his negligence in its exercise the master should be held responsible.   The workingman should not be sacrificed to theories and abstractions which are plainly at variance with actual industrial conditions, or which will permit the master to evade his responsibility by delegating his authority.   Our industrial development, in which the corporate employer is fast superseding the individual, tends to make the direction of labor less and less that of the personal master, and to commit it more and more to the vice principal.   The safety of those under his direction does not permit the vice principal to divest himself of his character as the master's representative merely by engaging in the work of a subordinate.   However employed, within the limit of his authority, his acts and commands should be deemed those of the master.   The tendency of the precedents on this point is to develop a system that will practically free the master from responsibility, and

leave the workingman at the mercy of a superior who is only, in law, a fellow servant.

In the case before us, Connery was employed by the defendants as foreman of a department in the boiler shop, with "probably a hundred men" under his direction, and having, as he testified, "general supervision of the department." As to that department, there can be no question of his character as a vice-principal. I may add that I do not concur in the view held by the trial judge, that the defendants' liability for Connery's acts, as vice-principal, depended on his power to discharge. The plaintiff was employed, under Connery, to attend a traveling crane, used for the transportation of portions of boilers. In attaching these to the crane, two classes of appliances were provided: one with hooks only, and another with a bolt attached. The plaintiff objected to using the former, telling Connery he thought they were not strong enough, but Connery ordered him to use them, because the latter, though stronger, were slower in operation. On the afternoon of December 9, 1899, in lifting a fire door, a hook broke, but no one was injured. During the evening, in lifting a throat-sheet, another hook broke, letting the metal fall on the plaintiff's foot; hence this action.

The plaintiff having been thus restricted to the use of the weaker appliance, the defendants must be held to have assumed the responsibility for its sufficiency, unless it was obviously inadequate; and whether it was so, was a question to be determined by the jury. It was submitted to them with instructions quite as favorable to the defendants as they were entitled to. In my view of the questions involved, the judgment should be affirmed.