### MAGNOLIA PETROLEUM CO. v. FORD.
(No. 524.)

Court of Civil Appeals of Texas. Eastland.
Jan. 25, 1929.

Rehearing Denied March 1, 1929.

98

Conner & McRae, of Eastland, for appellant. Will R. Saunders, of Breckenridge, and Grisham Bros., of Eastland, for appellee.

FUNDERBURK, J. In the trial court Mrs. Eleanora Ray Ford, joined pro forma by her present husband and suing for herself and her two minor children, recovered judgment against Magnolia Petroleum Company for $4,000. The suit was for exemplary damages only for alleged gross negligence resulting in the death of John T. Ray, the former husband of Mrs. Ford, and father of said two children, who at the time was an employee of said company as a machinist. The defendant was a subscriber under the Workmen's. Compensation Act. The case is brought here by appeal of the defendant company.

By far the greater part of appellant's brief deals with propositions which are only applicable to the case if the common-law de-

fenses of contributory negligence and assumed risk are, under the law, available as defenses to the suit. Appellant seems to assume that they are and asserts no proposition designed to show that such is the case. Appellees contend that R. S. art. 8306, § 1, abolished such defenses in a case of this kind. We have reached the conclusion that this is correct. Section 1 of article 8306 purports to abolish said common-law defenses in any action to recover damages for personal injuries sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained. The act provides a number of exceptions, none of which in terms include actions seeking to recover exemplary damages for gross negligence. Section 5 of said article excepts from the operation of the Workmen's Compensation Act claims for exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be, of any deceased employee whose death is occasioned by gross negligence of any person, firm, or corporation, from the employer of such employee at the time of the injury causing the death of the latter. This exception does not purport ·to include with it the right of the defendant to interpose the common-law defenses of contributory negligence, assumed risk, etc., nor in any manner to limit the provisions of section 1. No good reason occurs to us why the Legislature should have excepted this character of causes of action from the Workmen's Compensation Act, and at the same time to have denied the right to interpose such defenses. A question of the proper construction of the statute of more or less difficulty might be presented, were it not for the fact that, in our opinion, the legislative history of the Workmen's Compensation Act makes quite clear the intent that such defenses shall be denied in suits like the one at bar. The original Workmen's Compensation Act was passed in 1913. In its original form there were sections corresponding to sections 1 and 5 of the present law. Section 1 then, as now, abolished the defenses of assumed risk, contributory negligence, etc., and section 5 excepted from the operation of the law actions for exemplary damages to the same class of persons in death cases as now, but the original section 5, contrary to the present section, provided: " * * * In all cases where exemplary damages are sought under this section, in case the injured party has already been awarded actual damages by the board herein provided, said fact and said amount so received shall be made known to the court or jury trying said cause for exemplary damages; and on the issue for exemplary damages he shall have the same defenses as under the existing law." Section 5, c. 179, p. 429, Acts 1913.

Instead of the provisions just quoted, the

present section 5, constituting the amendment of 1917, reads: "In any suit so brought for exemplary damages the trial shall be de novo, and no presumption shall exist that any award, ruling or finding of the Industrial Accident Board was correct. In any such suit, such award, ruling or finding shall neither be pleaded nor offered in evidence." R. S. 1925, art. 8306, § 5.

There is thus manifest by the amendment a complete reversal of the legislative policy in one respect and an entire omission of the provision that the theretofore existing defenses should be available. This, we think, must be held to show the legislative intent that the provisions of section 1 should thereafter apply to the causes of action mentioned in said section 5. This construction of the law eliminates a number of points relied on for reversal of the case.

█ The question is presented whether there was any evidence of gross negligence to justify the submission of an issue to the jury. The appellant contended that the court should have given a peremptory instruction in its favor. The question is raised in different ways, as that there was no evidence of gross negligence, no evidence that the alleged negligence was the proximate cause of the death of John T. Ray, no evidence that appellant could reasonably have foreseen the injury to deceased as the probable result of the alleged negligence, and no evidence of any notice to appellant of the existence of the alleged defects essential to show gross negligence. All these phases of the question, we think, may be covered in the consideration of the question as to whether the evidence raised an issue for the jury as to the existence of gross negligence.

"Gross negligence" is a term of varying significance in different jurisdictions. In this state there was long ago recognized the necessity of affixing to the term a definite meaning. This the Supreme Court undertook to do in Southern Cotton Press Co. v. Bradley, 52 Tex. 587, as follows: "Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise a presumption of a conscious indifference to consequences."

"Gross negligence, to be the ground for exemplary damages, should be *that entire want of care* which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it." M. P. Ry. Co. v. Shuford, 72 Tex. 165, 10 S. W. 408.

In I. & G. N. R. Co. v. Cocke, 64 Tex. 151, it is said: "Negligence cannot be considered 'gross' unless evidenced by an entire failure to exercise care, or by the exercise of so slight a degree of care as to justify the belief that the person on whom care was incumbent was indifferent to the interest and welfare of others." Dallas City R. Co. v. Beeman, 74 Tex. 291, 11 S. W. 1102; Robertson v. Magnolia Petroleum Co. (Tex. Civ. App.) 255 S. W. 223.

The "gross negligence" relied on for recovery herein consists substantially of the following facts: That at some indefinite time prior to the accident the defendant, in overhauling a "shaper machine," replaced one part with another slightly larger. The replaced part was a round iron shaft constituting one of the supports for the upper and movable part of a heavy machine, weighing anywhere from 800 to 1,200 pounds, called a table. The table was designed to be moved up or down and laterally from side to side by means of cranks. It was supported by attachment to the back part of the framework of the entire machine by means of 12 stud bolts, 6 on each side. To be moved up or down it was necessary to loosen the stud bolts. These stud bolts, when screwed up tight, were amply sufficient to hold up the weight of the table, regardless of any other supports. The table, it seems, was designed to be raised or lowered by means of a telescope elevator screw. This screw worked out of a housing which was attached to the base of the machine. The screw was not attached to the table above. In operation and when the table was supported at the desired height by the stud bolts, it glided over the top of the elevator screw so as to practically clear the same when the table was moved as far as it would go to the side. This elevator screw constituted a support for the table while in operation, having thus a double design. Still forward of the elevator screw was the part that during the said overhauling was replaced. This shaft, something like 1½ or 2 inches in diameter, was not attached to the base of the machine, but was designed to glide along on the base from side to side with the lateral movements of the table. It passed up through a hole in the lower part of the table, which was a boxlike affair, and was made fast to the table at any desired height of the table by means of a "set collar" and screw inclosed in a flange or housing. The "set collar," a circular piece of metal, was designed to fit round the upright shaft and to be movable up or down the shaft when the screw passing through same to the shaft was loosed and to be held stationary to the shaft by tightening the screw. The original shaft and the inner surface of the "set collar" were smooth. In the overhauling above referred to the shaft was threaded, as was also the "set collar," to prevent slipping. Appellees claimed that the collar was reamed out to enable it to fit over the larger sized shaft that replaced the original. This "reaming out" had the effect of weakening the collar. It would not support as great weight without breaking as it would before being reamed out.

On the occasion of the accident, John T.

Ray, operator of the shaper machine, undertook to make some repairs on the above-mentioned "elevator screw." To do·so he loosed the 12 stud bolts, leaving the table without their support. The elevator screw being out of repair, for that reason furnished no support for the table. Ray, who had no knowledge of the "reaming out" of the "set collar," depended on the shaft with the set collar, being only one of the supports of the table, to hold up the entire weight of the table during the repairs. Ray then got his head down under the table to begin repairs on the elevator screw, when the table, dropping down, killed him. After the accident the set collar was found to be broken, evidently caused by the weight of the table.

There was a claim of gross negligence based upon a failure to inspect the machine, which phase of the case need not be considered, since the jury found that ·there was no negligence in the matter of inspection.

Disregarding all testimony · of witnesses tending to rebut the existence of negligence and giving the fullest weight and credence that a jury would be authorized to do to the testimony designed to establish the conclusion of negligence, we may say that the evidence shows that, during an overhauling of the shaper machine at a time from three to six months prior to the accident, the set collar was reamed out to an uncertain extent, but to such extent that the collar would not support the entire weight of the table without breaking; the work of reaming out the collar was done in the shop, under the supervision of the head mechanic, who had knowledge of such act, or was chargeable with knowledge of same; the deceased knew nothing about the collar being reamed out and had the right to assume that his employer had been guilty of no negligence by which the effectiveness of the collar, for the purposes it was designed to be used, had been impaired. If the collar had not been weakened by the reaming out process, it would have held up the table and deceased would not have been killed.

As a matter of law, does this fall short of showing gross negligence? We have reached the conclusion that it does, particularly when considered in connection with the undisputed facts and other evidence introduced by appellees. There is a total lack of evidence that in the design or construction of the machine it was intended that the set collar should be used to hold up the whole weight of the table. There is likewise a total absence of evidence of any custom or practice of depending upon this collar ·to hold up the entire weight of the table. In the machine as it came from the manufacturers the staff constituting the support in question was perfectly smooth. The inner surface of the encircling set collar was smooth. It was intended, by a turn or two of the set screw, to draw one smooth surface against the other so tight as to effectuate the

purpose of the support by means of friction alone. Certainly, then, such purpose could not be to sustain, perhaps, a 1000-pound weight. Manifestly, the purpose of the set collar was to firmly lock the support to the table. It was undisputed that at least one purpose, if not the main purpose, of this support, was to prevent vibration of the table during heavy work. It was likewise undisputed that this support was not necessary and was not used at all times the table was being operated. To better accomplish this design of the set collar than was done in the original construction of the machine, corresponding threads were cut in the staff and collar. What was there to charge the employer with notice that it mattered at all that the collar was reamed out so that it would not support as great a weight as formerly, if its effectiveness for the purpose of its use was in no manner impaired, but, on the contrary, improved by the interlocking threads to prevent slipping? As said in Corpus Juris: "Where the place of work, machinery or appliances is reasonably safe and suitable for the purpose for which it was intended, a servant cannot hold his master liable for personal injuries resulting from its inappropriate, unauthorized, careless, improper or unusual use or test." 39 C. J. 441. This statement of the law has been approved by courts of this state. See, Dawson v. King (Tex. Com. App.) 222 S. W. 164; Roberg v. H. & T. C. R. Co. (Tex. Civ. App.) 220 S. W. 790.

Application of this principle requires us to hold that the employer in this case could not foresee, and was not chargeable with the duty of foreseeing, that its servant would make ·an unnecessary or unusual use of the collar in question from which injury to him might reasonably be expected to result. There was then, as we see it, no proof of even ordinary negligence. We are compelled to this view of the matter, even if at the time the collar was being refitted the employer should have foreseen that at some time an employee would probably have occasion to get his body under the table in order to make some repairs or for other proper purpose. There was no more reason for the employer to foresee that an employee would get under the table with the main supports removed than that an employee who, when furnished different sizes of chains for different purposes, would unnecessarily use an insufficient sized chain for a particular purpose, as in the case of Roberg v. H. & T. C. R. Co., supra. There is no conflict in the evidence whatever that there was no necessity in removing and leaving removed the principal and admittedly adequate support of the table and to depend alone upon an auxiliary support the very mechanism of which shows that it was not designed to support great weights. While, perhaps, two or three witnesses testified that they had known the entire weight of the table to be

supported by this staff and set collar alone, and one or two had depended upon it to do so, only one witness, a comparatively inexperienced mechanic, said that this support was designed to hold up the entire weight. In answer to cross-interrogatories, he said the object of the support was not to hold up such entire weight, thus strongly suggesting an error in the transcribing of his testimony. At any rate, this but leads up to the matter next noticed.

But, even if appellant should have foreseen that at some time one of its employees might have occasion to release the table from its certain supports, and would not avail himself of the two or three methods at hand to keep the table up, but, on the contrary, would rely on the support in question to sustain the entire weight of the table, what further consequence could have been reasonably foreseen than perhaps the loss of a few moments' time to raise the table up again and maybe replace a broken collar? How could appellant foresee that its employee would not only remove the main supports of the table, thereby placing the whole weight on the set collar, but would at the same time unnecessarily place his body under the table? Not a witness in the case testified it was necessary to do so, but, on the contrary, that it was wholly unnecessary. Perhaps every witness testified that he never knew such a table to fall. No witness testified that he ever knew of any one to place his body under such table to make repairs. All of the testimony shows that, in order to make repairs on the elevator screw, it was unnecessary to get under the table.

While contributory negligence and assumed risk are not available as affirmative defenses, this does not mean that in testing the existence, or not, of negligence the employer is to be regarded as chargeable with the duty of foreseeing and guarding against all dangers necessarily inherent in a given line of business. West Lumber Co. v. Smith (Tex. Com. App.) 292 S. W. 1103.

Abolition of such defenses in cases like this does not work a modification of the rule that the employer is guilty of actionable negligence only when by his act or omission claimed to constitute negligence he should have reasonably foreseen or anticipated the resultant injury or some like injury as a probable result. As said in Agent v. Houston Belt, etc., R. Co. (Tex. Civ. App.) 247 S. W. 649: "Whether the acts of the defendants alleged to be actionable negligence were in fact such negligence depends upon whether the resultant injury or some like injury could have been reasonably anticipated as a result of the acts complained of. If no such injury could have been so anticipated, no recovery could be had."

In the absence of any evidence whatever to charge the appellant with a duty to foresee that the deceased or any employee under similar circumstances would, in an attempt to make repairs on the shaper machine, remove all supports from the table, except the one in question, and then would unnecessarily get under the table, we think we would be required to hold, as a matter of law, that the sole proximate cause of the injury was the act of deceased in getting under the table. Where the evidence without dispute unmistakably shows that a particular act or omission was the proximate cause of an injury, it is error to submit an issue of proximate cause to the jury, unless it is clear that the jury was not misled thereby. T. & P. Ry. Co. v. McCoy, 90 Tex. 264, 38 S. W. 36; Gulf, C. & S. F. R. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756; Culpepper v. I. & G. N. R. Co., 90 Tex. 627, 40 S. W. 386; Parks v. S. A. Traction Co., 100 Tex. 222, 94 S. W. 331, 98 S. W. 1100. In other words, in such case, proximate cause comes under the rule governing any other issuable fact in a case which is admitted or established by uncontroverted evidence.

All that has been said would be true, we think, were we considering only a question of ordinary negligence; but what is there in the entire evidence to remotely suggest that appellant by its act in reaming out the set collar to make it fit a larger shaft exercised such "entire want of care which would raise a presumption of a conscious indifference to consequences"? What was there in such act as to "raise the belief that the act * * * was the result of a conscious indifference to the welfare" of the deceased? By the only reasonable interpretation of the evidence the very operation by which the set collar was reamed out was the same one by which the support and collar were threaded to make them more secure against slipping and thereby better to accomplish their intended purpose. This very act itself evidencing *some care* takes the transaction out of the definition of gross negligence. We doubt if gross negligence could possibly exist under the general circumstances of the case, as disclosed by appellee's evidence, in the absence, among other things, of (a) certain knowledge on the part of appellant that the deceased would rest the entire weight of the table so as to be supported alone by the strength of this collar; (b) that the collar in such case was so weakened by the reaming out process that it would break; and (c) certain knowledge that deceased would place his body under the table. We doubt if, in the absence of a concurrence of all these three things, there could be shown an entire want of care indicating a conscious indifference to the safety of employees. At any rate, some of these facts would have to be present and so far as we can see there is none.

The case appears to have been fully developed, and, being impressed with the view that undisputed facts exclude the existence of any cause of action for exemplary damages for

gross negligence, the judgment of the trial court will be reversed, and judgment will be rendered for appellant.